## ATCHISON, T. & S. F. RY. CO. v. SMITH.

No. 938.    Opinion Filed March 11, 1913.

Rehearing Denied May 20, 1913.

(132 Pac. 494.)

1. **CONTRACTS—Construction—What Law Governs.** When the contract is to be partly performed in the state where it is made and partly in another, the presumed intention of the parties, gathered from circumstances surrounding the transaction, must govern.

2. **CARRIERS—Contract of Carriage—What Law Governs—Limitation of Liability.** S., the wife of an employee of a railway company, procured a free pass providing round-trip transportation between Wellington, Kan., situated a short distance north of the Oklahoma state line, to Perry, Okla., situated about 54 miles south thereof. On the back of the pass was the following provision, which was signed by the plaintiff: "This pass is not transferable, must be signed in ink by the holder thereof, and the person accepting and using it thereby assumes all risk of accident and damage to person and baggage, under any circumstances, whether caused by negligence of agents, or otherwise. * * *" She was injured in the state of Oklahoma on the return trip. Held, that in an action to recover damages for such injury the waiver on the back of the pass, although executed and delivered in the sister state, must be construed according to the laws of this state, where such a provision is valid, rather than the laws of the sister state, where it is invalid.

3.    SAME—Validity. When a railroad company gives gratuitously, and a passenger accepts, a pass, the former waives its rights as a common carrier to exact compensation; and, if the pass contains a condition to that effect, the latter assumes the risks of ordinary negligence of the company's employees; the arrangement is one which the parties may make, and no public policy is violated thereby. And if the passenger is injured or killed while riding on such a pass gratuitously given, which he has accepted with knowledge of the conditions therein, the company is not liable therefor either to him or to his heirs, in the absence of willful or wanton negligence.

(Syllabus by the Court.)

*Error from District Court, Kay County;*
*Wm. M. Bowles, Judge.*

Action by Minnie F. Smith against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

*Cottingham & Bledsoe* and *Charles H. Woods,* for plaintiff in error.

*Moss, Turner & McInnis,* for defendant in error.

KANE, J. This was an action for damages for personal injuries, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, in the district court of Kay county. Upon trial to a jury, there was a verdict for the plaintiff, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

The plaintiff was riding on a free pass at the time the injury occurred, which was delivered to her in the state of Kansas, of which state she was a citizen, and under whose laws the railroad corporation was organized. The pass was good for a round trip between Wellington, Kan., situated a short distance north of the Oklahoma state line, to Perry, Okla., situated about 53 or 54 miles south thereof. The injury occurred in Oklahoma, while the plaintiff was on the return trip. On the back of the pass was the following provision, signed by the plaintiff:

"This pass is not transferable, must be signed in ink by the holder thereof, and the person accepting and using it thereby

assumes all risks of accidents and damages to person and baggage, under any circumstances, whether caused by negligence of agents, or otherwise. * * * I accept the above conditions."

The court below decided the case upon the theory that the provision on the back of the pass must be governed by the laws of Kansas, where, by virtue of a statute which prohibits railroad companies from limiting their common-law liability as common carriers, such provisions are held to be void and of no effect, and therefore the plaintiff would be entitled to recover if the jury found that the defendant failed to exercise ordinary care and diligence for her safe carriage. That the provisions on the back of the pass would be void under the laws of Kansas has been settled by decisions of the Supreme Court of that state. *C., R. I. & P. Ry. Co. v. Posten*, 59 Kan. 449, 53 Pac. 465; *St. L. & S. F. R. Co. v. Sherlock*, 59 Kan. 23, 51 Pac. 899; *Sewell v. A., T. & S. F. Ry. Co.*, 78 Kan. 1, 96 Pac. 1007.

Counsel for plaintiff in error contends: (1) That the action is an action for tort, and the provision on the back of the pass, if treated as a contract, is by its terms tied to the tort, and the same law should be applied to one as to the other; and (2) that the relation between plaintiff and defendant was not contractual, that the pass was a mere license, and that the provision on the back thereof was a condition attached to the license. As the cause of action accrued prior to statehood, if either contention is correct, the case must be governed by the cases of *Northern Pac. Ry. Co. v. Adams*, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513, and *Boering v. Chesapeake Beach Ry. Co.*, 193 U. S. 442, 24 Sup. Ct. 515, 48 L. Ed. 742.

The opinions in the above cases do not make entirely clear the exact status the Supreme Court intended to accord to such stipulations. In the Adams case, *supra,* where, as in the case at bar, the stipulation was signed by the holder of the pass, Mr. Justice Brewer, who delivered the opinions in both

cases, uses some language from which it might be inferred that the court accorded to the stipulation the status of a contract, whilst in the Boering case, where the stipulation was not signed, it seems to have treated it as a condition attached to a license, and binding upon the person accepting the pass, although notice of such stipulation was not brought home to her. In the former case, discussing the stipulation, it is said:

"So far as the element of contract controls, it was a contract which neither party was bound to enter into, and yet one which each was at liberty to make, and no public policy was violated thereby."

In the Boering case the following language is found:

"She was simply given permission to ride in the coaches of the defendant. Accepting this privilege, she was bound to know the conditions thereof. She may not, through the intermediary of an agent, obtained a privilege—a mere license—and then plead that she did not know upon what conditions it was granted. A carrier is not bound, any more than any other owner of property who grants a privilege, to hunt the party to whom the privilege is given, and see that all the conditions attached to it are made known. The duty rests rather upon the one accepting the privilege to ascertain those conditions."

In the case of *Smith v. A., T. & S. F. Ry. Co.*, 194 Fed. 79, 114 C. C. A. 157, where the plaintiff, who is related to the plaintiff herein, was riding upon the same pass involved herein and was injured by the same accident, the Circuit Court of Appeals for the Eighth Circuit seems to accord to the pass itself the status of a license and to the provision on the back thereof the status of a contract. Speaking of this provision, it was said, "The contract is by its terms tied to the tort, and the same law should be applied to the one as to the other."

But whether we treat the stipulation involved herein as a contract which by its terms is tied to the tort or as a condition attached to a license, or as a contract subject to the ordinary rules for determining the law with a view to which it was made, the same conclusion must be reached:

In our judgment, so far as the element of contract controls, it must be construed by the laws of Oklahoma, where it was to be principally performed and by whose laws it would be valid, rather than by the laws of Kansas, where it would be invalid. In *Liverpool & Great Western Steam Co. v. Phenix Insur. Co.,* 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788, it was held that contracts are to be governed as to their nature, and their validity, and their interpretation, by the laws of the place where they were made, unless the parties when entering into the contract clearly manifest a mutual intention that it shall be governed by the laws of some other state or country. Other authorities and cases to the same effect are: 2 Wharton on Conflict of Laws (3d Ed.) pp. 1072, 1073; Minor on Conflict of Laws, sec. 169; Hutchinson on Carriers, sec. 212; *Ill. Cent. R. Co. v. Beebee,* 175 Ill. 13, 50 N. E. 1019, 43 L. R. A. 210, 66 Am. St. Rep. 253; *Hudson v. Northern Pac. R. Co.,* 92 Iowa, 231, 60 N. W. 608, 54 Am. St. Rep. 550. Mr. Hutchinson states the rule as follows:

"If the acts of the parties were such that it is impossible to determine what law governed in the creation of the rights arising out of the contract, a court would resort to the legal fiction that the law of the place where a contract of carriage was made must, in the absence of proof of the intention of the parties to the contrary at the time of making the contract, be looked to for the validity of any rights arising out of it."

The question then arises: Were the acts of the parties such as to make it impossible for the court to determine their intention as to which law should be looked to for the purpose of determining the validity of any rights arising out of this contract? We think not. Mr. Justice Matthews, in *Pritchard v. Norton,* 106 U. S. 137, 1 Sup. Ct. 112, 27 L. Ed. 104, after quoting from Phillimore (4 Int. Law, 470), to the effect that the rule of *lex loci* rests upon a presumption which may be rebutted by the fact that the contract is void by the law of the place where executed though valid by another, says:

"This rule, if universally applicable, which perhaps it is not, though founded on the maxim, '*Ut res magis valeat, quam pereat,*' would be decisive of the present controversy, as conclusive of the question of the application of the law of Louisiana, by which alone the undertaking of the obligor can be upheld. At all events, it is a circumstance, highly persuasive in its character, of the presumed intention of the parties, and entitled to prevail, unless controlled by more express and positive proofs of a contrary intent."

In the instant case the parties were both residents of the state of Kansas, and were bound to know the laws of that state. Much the greater portion of the journey covered by the transportation lay in Oklahoma; both parties knew the stipulation on the back of the pass would be void by the law of Kansas. The parties cannot be presumed to have contemplated a law which would defeat their engagement. Mr. Dicey, in his work on Conflict of Laws (page 595), says:

"When, * * * as frequently happens in contracts for through carriage, a provision of the contract is valid if governed by the law of one country, but invalid if governed by the law of another country, our courts are inclined to hold that the contract is governed by the law which gives validity to all its terms."

In *Greathead v. Walton*, 40 Conn. 226, the court said:

"If the law of New York would not, under the circumstances, impose any liability on the defendant, we must take it for granted that the parties entered into this contract with reference to the laws of Connecticut under which, certainly, a liability was incurred."

*Hazel v. Railroad Company*, 82 Iowa, 477, 48 N. W. 926, is another case where the same question was under discussion. It was said:

"In this case the parties contracted under the laws of Dakota, and the fact that such a contract is void in this state shows that it was intended that our laws should not have any application to their contract."

It is true that in that case it was held that the law of the place of the contract governed, and the case is cited merely to show that weight was given to the circumstances that the

contract involved was invalid by the law of the forum for the purpose of determining the intention of the parties as to which law should govern.

Paragraphs 4 and 5 of the syllabus in *Ryan & Co. v. M., K. & T. Ry. Co.*, 65 Tex. 13, 57 Am. Rep. 589, reads as follows:

"(4) When the contract is to be partly performed in the state where it is made and partly in another, the presumed intention of the parties, gathered from circumstances surrounding the transaction, must govern. (5) When there are no circumstances attending the transaction, except the mere execution, delivery, and acceptance of a bill of lading, the safest rule to arrive at the intention of the parties is that which upholds rather than that which defeats, the contract, and the laws of the state under which the contract is valid should be applied."

Mr. Chief Justice Willie, who delivered the opinion of the court, says:

"Parties to a contract are presumed to intend that it shall be enforced. It is not to be presumed that they deliberately executed an agreement knowing that it was invalid. The carrier in this case must have intended to secure to itself some real protection from responsibility in the cases excepted in the bill of lading, and the appellee that he should have this protection. By the laws of Missouri it was afforded; by the laws of Texas it was not. To give validity to the contract and thus carry out the intention of the parties, we must apply to it the laws of the former state, and it is our opinion that by these laws its validity must be determined."

We think that under the circumstances it is clear that it was the intention of the parties that the stipulation limiting the carrier's common-law liability should be governed by the laws of the state of Oklahoma. Having reached this conclusion, the case is governed by the authorities heretofore cited.

The judgment of the trial court is accordingly reversed, and the cause remanded, with directions to proceed in conformity with the views herein expressed.

HAYES, C. J., and DUNN and TURNER, JJ., concur; WILLIAMS, J., absent.