**\*MISSOURI, K. & T. R. CO. et al. v. ZUBER.**

No. 10053—Opinion Filed Oct. 7, 1919.

(Syllabus by the Court.)

1. **Carriers—Negligence—Liability to Pass-Holder.**

When a railroad company gives gratuitously, and a passenger accepts, a pass, the former waives its rights as a common carrier to exact compensation, and if the pass contains a condition to that effect, the latter assumes the risk of ordinary negligence of the company's employees. The arrangement is one which the parties may make and no public policy is violated thereby; and if the passenger is injured while riding on such a pass

* Appealed to the Supreme Court of the United States.

gratuitously given, which she has accepted, the company is not liable therefor in the absence of gross negligence, fraud, or willful wrong of itself or its servants.

**2. Same—Negligence—Gross Negligence.**

The leaving open of a switch leading to a side track at a time when a passenger train may be expected momentarily, without ascertaining the location of the train, is gross negligence, where the statute defines such negligence to be the want of slight care and diligence.

**3. Appeal and Error—Instructions—Harmless Error.**

Instructions must be considered together, and while an instruction standing alone may be subject to criticism, yet if the instructions when taken in their entirety fairly submit the issues to the jury, reversible error is not committed.

Error from District Court, Washington County; R. B. Boone, Judge.

Action by Hanna L. Zuber against the Missouri, Kansas & Texas Railway Company and another. From judgment for the plaintiff the defendants bring error. Affirmed.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error M., K. & T. R. Co.

Cottingham & Hayes, for plaintiff in error A.. T. & S. F. Ry. Co.

Twyford & Smith and A. H. Meyer, for defendant in error.

PITCHFORD, J. This case was originally instituted in the district court of Washington county on July 14, 1915, by the defendant in error against the plaintiffs in error. The parties will hereafter be referred to as they appeared in the court below. The plaintiff was a resident of the city of Sharon, Pa. The defendant M., K. & T. Ry. Co., hereafter referred to as the "Katy", owns and operates a line of steam railroad, which runs from the city of St. Louis, in the state of Missouri, to the city of Oklahoma City, in the state of Oklahoma, which line of steam railroad runs through the city of Bartlesville, in Washington county, state of Oklahoma; the defendant A., T. & S. F. Ry. Co., hereafter referred to as the "Santa Fe", owns and operates a line of steam railroad, which runs from the city of Independence, in the state of Kansas, to the city of Tulsa, in the state of Oklahoma. and through the city of Bartlesville, in Washington county, state of Oklahoma. At a point approximately two miles north and east of the city of Bartlesville, in Washington county, the line of railway of the Katy runs into and connects with the railway line of the Santa Fe; and for a distance of some two or three miles from the

said point, and to a point which is some eight or ten blocks south and west of the passenger station of the Santa Fe in the city of Bartlesville, the Katy uses the tracks and roadbeds of the Santa Fe. The portion of the line of railway belonging to the defendant Santa Fe between said points, as aforesaid, and all switches and side tracks connected therewith between said points, belong to the Santa Fe and are under its exclusive control. The Santa Fe had permitted the Katy to move and propel its trains over that portion of its tracks for some time prior to the date of the injury. On the 24th day of August, 1914, the defendant Katy issued and delivered to plaintiff a certain trip pass entitling the plaintiff to one trip from St. Louis, Mo., to Oklahoma City, Okla.; thereafter, on the 23d of September, 1914, plaintiff boarded one of the defendant Katy's regular passenger trains at St. Louis. Mo., en route to Oklahoma City. Okla. On the 24th day of September at about 10:30 o'clock a. m., the train upon which plaintiff was a passenger reached a point a short distance north and east of the Santa Fe passenger station in Bartlesville, Okla. Said passenger train was moving south and west at a speed of approximately thirty miles per hour, and ran into an open switch which branched off from the main line of the Santa Fe track and near said point. The passenger train was wrecked and the plaintiff was injured. On the morning of the wreck a crew or gang of section men in the employ of the defendants had been working on and repairing the tracks and side tracks of the Santa Fe at said point, and were engaged in repairing the same at the time said passenger train arrived at the switch.

The Katy filed an answer, alleging that it issued to the plaintiff, as the mother of E. B. Zuber, brakeman in the employ of the B. & O. Ry. Co., a free pass, entitling plaintiff to free transportation on the lines of the defendant from St. Louis, Mo., to Oklahoma City, Okla., and return; and that at the time of the alleged injury to the plaintiff she was being transported on one of defendant's passenger trains under and by virtue of said pass issued to the plaintiff as aforesaid: that said pass was issued to and received by the plaintiff and honored by the defendant under the terms and conditions printed thereon—that the person accepting and using said pass assumed all risk of accident, injury and damage, whether resulting from negligence of the servants and agents of the said defendant. or otherwise; and that the plaintiff is now barred from maintaining this action. The answer filed by the Santa Fe was practically the same as that filed by the Katy. The jury in the court below returned

a verdict in favor of the plaintiff for $3,000. The defendants appeal.

The assignments of error are numerous, but the main points relied upon by the defendants for reversal are: First, that the plaintiff, in accepting the pass over the defendant road, having thereby assumed all risk of accident, injury and damage, whether resulting from the negligence of the servants and agents of the company, or otherwise, is not entitled to recover; second, that the court erred in giving instructions Nos. 5, 6, 9, 10, and 13.

The pass upon which the plaintiff was being transported contained the following condition:

"This pass is not transferable and must be signed in ink by the holder thereof. The person accepting and using it thereby assumes all risk of accident, injury and damage, whether resulting from the negligence of the servants and agents of the companies, or otherwise. It will be forfeited if presented by any other than the undersigned. I am not prohibited by federal or state laws from receiving free transportation, and this pass will be lawfully used. * * * Accept it on the above conditions."

This pass was issued to the plaintiff as the dependent mother of a son who was in the employ of the B. & O. Ry. Co., and was a character of pass authorized by the Acts of Congress relating to interstate commerce, the particular act in question being entitled:

"An Act to create a commerce court and to amend the act entitled 'An Act to regulate commerce,' approved February 4, 1887, 'as heretofore amended, and for other purposes, approved June 18, 1910, 36 Stat. L. 539, which provides (section 1, page 546); 'No common carrier subject to the provisions of this act, shall, after June 1, 1907, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employees and their families. * * * Provided, that this provision shall not be construed to prohibit the interchange of passes for the officers, agents and employees of common carriers and their families."

A case in many respects similar to the instant case was decided by this court in A., T. & S. F. R. Co. v. Smith, 38 Okla. 157, 132 Pac. 494. There the plaintiff was riding on a free pass at the time the injury occurred, which was delivered to her in the state of Kansas, of which state she was a citizen, and under whose laws the railroad corporation was organized. The pass was good for the round trip between Wellington, Kan., situated a short distance north of the Oklahoma state line, to Perry, Okla., situated about 53 or 54 miles south thereof. The injury occurred in Oklahoma, while the plaintiff was on the return trip. On the back of the pass was the following provision signed by the plaintiff:

"This pass is not transferable, must be signed in ink by the holder thereof, and the person accepting and using it thereby assumes all risk of accidents and damages to person and baggage under any circumstances, whether caused by negligence of agents, or otherwise. * * * I accept the above conditions."

There the court held that the plaintiff was not entitled to recover. Justice Kane, in the third paragraph of the syllabus, said:

"When a railroad company gives gratuitously, and a passenger accepts, a pass, the former waives its rights as a common carrier to exact compensation, and if the pass contains a condition to that effect, the latter assumes the risk of ordinary negligence of the company's employees. The arrangement is one which the parties may make, and no public policy is violated thereby, and if the passenger is injured or killed while riding on such a pass gratuitously given, which he has accepted with knowledge of the conditions therein, the company is not liable therefor, either to him, or to his heirs, in the absence of wilful or wanton negligence."

In the case of Smith v. A., T. & S. F. R. Co., 194 Fed. 79, the syllabus is as follows:

(1) "Whether a waiver of liability for injuries printed on the back of a pass delivered to an employee, was valid so as to constitute a defense to an action for injuries resulting from the carrier's ordinary negligence depended on the law of the place of the accident and not on the law of the place where the pass was delivered, since the rule that a contract will be interpreted according to the law of the place of its execution and delivery does not apply to actions of tort.

(2) "The Oklahoma Statute (Comp. Laws 1909, sec. 428), providing that a carrier of persons without reward must use ordinary diligence for their safe carriage was only applicable in the absence of contract, and did not apply to an employee traveling on a pass who had signed a waiver of liability for any injuries that might occur, which waiver was valid both in Oklahoma and in the Federal courts."

In the opinion, it is stated:

"The courts have uniformly held that a contract exempting a carrier from liability for negligence, valid at the place of its execution and delivery, will not avail as a defense when the injury occurs in the state by whose laws such contracts are declared to be void as against public policy. Having adopted that rule when the law of the place of the injury would impose a liability upon the carrier, can a contrary rule be adopted when such law would protect the carrier by enforcing the contract? We think not. The contract is by its terms tied to the tort, and the

same law should be applied to the one as to the other."

In the case of Boering v. C., B. R. Co., 193 U. S. 442, 48 L. Ed. 742, the action was brought to recover damages for personal injuries sustained by Mrs. Boering while riding upon a free pass, which contained the following stipulation:

"The person accepting and using this pass thereby assumes all risks of accident, damage to persons and property, whether caused by negligence of the company's agent or otherwise."

The contention of the plaintiff in that case was that the company was liable in any event for injuries caused by its negligence, because it did not appear that Mrs. Boering knew or assented to the stipulation. The testimony showed that the husband had secured the transportation, and that they had traveled on these passes before, and plaintiff insisted that the exemption from liability for negligence resulted only from a contract therefor; that there could be no contract without knowledge of the terms thereof and assent thereto, and that she neither had knowledge of the stipulation, nor had she assented to its terms; that, therefore, there was no contract between her and the company exempting it from liability for negligence. The court there held that the plaintiff in accepting the free pass was bound to know the conditions thereof, and that she could not through the intermediary of an agent obtain the privilege—a mere license—and then plead that she did not know upon what conditions it was granted. It was further held that a carrier is not bound any more than any other owner of property who grants the privilege, to hunt the party to whom the privilege is given, and see that all conditions attached to it are made known; that the duty rested rather upon the one receiving the privilege to ascertain those conditions. While the case just quoted is relied upon by the defendants as strongly tending to support their contention, yet we fail to see wherein there is any similarity between this case and the case at bar.

The case of N. P. R. Co. v. Adams, 192 U. S. 440, 48 L. Ed. 513, relied upon by defendants, was an action brought by the widow and son of the deceased. The deceased was traveling on a free pass containing the following:

"The person accepting this free ticket agrees that the N. P. R. Co. will not be liable under any circumstances, whether of negligence of agents or otherwise, for any injury to the person, or for any loss or damage to the property, of the passenger using the same. I accept the above conditions."

The facts in that case are as follows: On November 13, 1898, the deceased started on one of the Northern Pacific trains from Hope, Idaho, to Spokane, Wash. Shortly after leaving Hope, Adams, then in the smoking car, went to the dining car for cigars. To reach the dining car, he passed through the day coach to the tourist sleeper. After buying the cigars, he left the dining car and went forward. This was the last seen of him. His body was found next day opposite a curve in the railway track about six miles west of Hope. There was no direct testimony as to how he got off the train, whether by an accidental stumble, or being thrown therefrom through the lurching of the train, which was going at a high rate of speed. The road from Hope to the place where the body was found is in Idaho. There was a verdict in favor of the plaintiffs for $14,000, which was sustained by the Court of Appeals for the Ninth Circuit. 54 C. C. A. 196, 116 Fed. 324, and thereupon the case was brought to the United States Supreme Court. Justice Brewer, in delivering the opinion, among other things, said:

"The question then is distinctly presented whether a railroad company is liable in damages to a person injured through the negligence of employees, who at the time is riding on a pass given as a gratuity, and upon the condition known to and accepted by him that it shall not be responsible for such injuries. It will be perceived that the question excludes injuries resulting from wilful or wanton acts, but applies only to cases of ordinary negligence. The facts of this case certainly do not call for any broader inquiry than this. The specific matters of negligence charged are the placing of a non-vestibuled car in a vestibuled train, and the high rate of speed at which the train passed around the curve at the place of injury. But non-vestibuled cars are in constant use all over the country—were the only cars in use up to a few years ago—and further, the deceased, having passed over the open platform, knew exactly its condition. As the court charged the jury, 'Adams must be presumed to have known that it was not vestibuled and to have acted with perfect knowledge of the fact.' The rate of speed was no greater than is common on other trains everywhere in the land, and the train was in fact run safely on this occasion. We shall assume, however, but without deciding, that the jury were warranted, considering the absence of the vestibuled platform and the high rate of speed in coming around the curve, in finding the company guilty of negligence; but clearly it was not acting either wilfully or wantonly in running its trains at this not uncommon rate of speed, and all that can at most be said is that there was ordinary negligence. Is the company responsible for injuries resulting from ordinary negligence to an individual whom it permits to ride without charge on condition that he take all the risk of such negligence."

In the case of the C. & W. C. R. Co. v.

Thompson, 234 U. S. 576, 58 L. Ed. 1476, Mr. Justice Holmes, delivering the opinion, said:

"The main question is whether when the statute permits the use of a 'free pass' to its employees and their families, it means what it says. The railroad was under no obligation to issue the pass. It may be doubted whether it could have entered into one, for then the services would have been the consideration for the duty and the pass, and by section 2 (Hepburn Act) it was forbidden to charge 'a greater or less or different compensation' for transportation of passengers from that in its published rates. The antithesis in the statute is between the reasonable charges to be shown in its schedules and the free passes which it may issue only to those specified in the act. To most of those enumerated, the free pass obviously would be gratuitous in the strictest sense, and when all that may receive them are grouped in a single exception, we think it plain that the statute contemplates the pass as gratuitous in the same sense to all. It follows, or rather is saying the same thing in other words, that even on the improbable speculation that the possibility of getting an occasional free pass entered into the motives of the employees in working for the road, the law did not contemplate his work as a conventional inducement for the pass, but, on the contrary, contemplated the pass as being what it called itself, free."

The contention of plaintiff in the case just cited was that the pass, being given to one of the employees of the defendant company, was really not a free pass, but was issued upon consideration of the services of the employee as an incident to the right to issue a free pass to an employee or his family, and conceded that the carrier had the right to impose upon the issuance, acceptance and use of a free pass the condition that the carrier shall not be liable in damages for personal injury to the recipient in consequence of its ordinary negligence, but urged this exemption would not apply to employees. The question of gross negligence was not there raised by the plaintiff, or considered by the court.

It is conceded by the plaintiff in the instant case that if the injury complained of resulted from ordinary negligence on the part of the defendants, she would not be entitled to recover, but she urges that the provision in the pass exempting defendants from liability was not intended to, nor did it, have the effect of protecting the defendants from injury resulting from gross negligence.

We have seen in the case of A., T. & S. F. R. Co. v. Smith, supra, that in an interstate pass the carrier may relieve itself from negligence, except in case of wilful negligence. As to what constitutes gross or wilful negligence, the authorities seem to be divided. Our statutes define the various degrees of negligence. Section 2916, Rev. Laws 1910, gives three degrees of care and of diligence, namely, slight, ordinary and great; the latter includes the former. Under section 2917, Id., slight care or diligence is defined to be such as persons of ordinary prudence usually exercise about their own affairs of slight importance; ordinary care or diligence is such as they usually exercise about their own affairs of ordinary importance; and great care or diligence is such as they usually exercise about their own affairs of great importance. Section 2918, Id., gives three degrees of negligence, namely, slight, ordinary and gross; the latter includes the former. These degrees of negligence are defined by section 2919, Id., as follows:

"Slight negligence consists in the want of great care and diligence; ordinary negligence consists in the want of ordinary care and diligence: and gross negligence consists in the want of slight care and diligence"

If the negligence complained of in the instant case was only ordinary negligence, the defendants would not be liable. Whether or not defendants were guilty of gross negligence was left for the jury to decide under the court's instructions defining the degrees of negligence. They found that the defendants were guilty of gross negligence. Whether or not acts surrounding a particular injury would constitute ordinary or gross negligence would depend upon all the circumstances surrounding the accident. We can conceive of many instances where the negligence would only be ordinary, and on the other hand, we can conceive of cases where the negligence would be gross. As long as the English language is spoken, we shall hear acts constituting negligence denominated as defined by our statutes. Defendants cite many respectable authorities seeming to hold that the negligence contemplated in the issuance of passes means any negligence, and that it is impossible to define negligence as being ordinary, gross or wilful, and that when it is said the carrier is relieved from negligence, it clearly means all kinds of negligence. There is some conflict of opinion in the several states of the Union as to what is covered by the stipulation in a free pass exempting the railroad from liability for injury caused by its negligence. There are a number of opinions holding that such a stipulation is valid and binding on the passenger, precluding a recovery for injuries whether caused by the carrier's negligence, or otherwise, and attempting to abolish degrees of negligence. Other courts, while conceding the validity of such exemptions in case of ordinary negligence, hold the carrier responsible in cases of wilful, wanton or gross negligence, and in Oklahoma, it is declared by section 797, Rev. Laws 1910:

"A common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud or wilful wrong of himself or his servants."

The California statute is identical with the above section. In the case of Walther v. So. Pac. R. Co., 159 Cal. 769, 116 Pac. 51, 37 L. R. A. (N. S.) 235, the wreck was caused by the passenger train running into an open switch. The court uses the following language:

"In her complaint she alleged that the accident and consequent death of deceased were caused by the 'gross negligence' of defendant, and these allegations were found by the trial court, which tried the case without a jury, to be true. * * * We think that the question of public policy in regard to such contracts of exemption, even as to passengers carried gratuitously, has been settled in this state by legislative enactment. Section 2175, of the Civil Code, provides: 'A common carrier cannot be exonerated by any agreement made in anticipation thereof, from liability for the gross negligence, fraud or wilful wrong of himself or his servants.' Aside from the question of the meaning of the term 'gross negligence' as used in this section, it is earnestly contended that the section has no application in the case of one carried without consideration of any kind, and that as to such passenger the carrier is not a common carrier at all. We are of the opinion that the question of consideration cuts no figure in determining the applicability of the section. Section 2168, of the Civil Code, contained in the same chapter, which is entitled, 'Common Carriers in General', declares that: 'Everyone who offers to the public to carry persons, property or messages, except only telegraphic messages, is a common carrier of whatever he thus offers to carry,' and, of course, the defendant was under this definition of a common carrier of persons. As such, under other provisions of the same chapter and other chapters, it was entitled to refuse to carry any person except upon compliance with certain requirements, including the payment of a prescribed reasonable compensation. but at the time of this accident at least, it could legally waive any of these requirements on the part of the passenger and could receive and carry him for a reduced, or a different consideration, or altogether without consideration.

"But. on whatever terms a common carrier of persons voluntarily received and carries a person, the relation of common carrier and passenger exists. This is recognized by some of the authorities upholding the exemption from liability for negligence provision in the case of a passenger carried gratuitously. See Rogers v. Kennebec Steamboat Co., 86 Me. 261. 25 L. R. A. 491, 29 Atl. 1069. The sole inquiry in this regard is, as has been said, whether the person was lawfully on the vehicle (See Ohio & M. R. Co. v. Muhling, 30 Ill. 9. 81 Am. Dec. 336), has been volun-tarily received by the common carrier on any terms for the purpose of carriage, and is not, as was the case in Sessions v. Southern P. Co., 159 Cal. 599, 114 Pac. 982, a mere trespasser on the vehicle.

"The voluntary waiver of all claim for compensation for carriage of a person does not take away from the status of the carrier as a common carrier so far as the person carried is concerned, any more than would a special reduction in the amount of compensation charged, on a special concession as to some other authorized requirement, accomplish such effect. The carrier is still a common carrier as to such person, with all the obligations of a common carrier, except in so far as those obligations are limited by contract provisions which are not inhibited by law. Other sections of our Civil Code permit such limitations as to certain matters not here involved, but section 2175 expressly prohibits limitations of liability for gross negligence on the part of the common carrier or his servants, whatever, as we read the various sections bearing upon this matter, may be the terms upon which it received and undertakes to carry a passenger.

"This brings us to a consideration of the question of the meaning of the term 'gross negligence'. as used in section 2175, of the Civil Code, for under the views already stated the exemption provision in the pass of deceased was not effectual to free defendant from liability for damages resulting from 'gross negligence' of the defendant or its servants, within the meaning of the term 'gross negligence', as used in said section. The contention of learned counsel for defendant is that these words, in the connection which they are used. imply something in the nature of wilful wrong, and do not include anything in the nature of a mere omission to exercise care, without knowledge that such omission will probably result in injury to others. Section 2175 was. as it now stands, a part of the original Civil Code, adopted in the year 1872. This Code contained two sections declaring that there are three degrees of care and diligence, 'slight,' 'ordinary,' and 'great,' and three degrees of negligence, 'slight,' 'ordinary.' and 'gross.' 'Slight care' was defined as that 'which is such as persons of ordinary prudence usually exercise about their own affairs of slight importance,' and 'gross negligence' was defined as that 'which consists in the want of slight care and diligence.' Sections 16 and 17. These sections were repealed outright in 1874, but such repeal cannot affect the question of the construction of the words 'gross negligence' in section 2175 of the Civil Code, as it is the intention of the Legislature at the time of the adoption of the latter section that must control.

"We see no warrant for holding that the term 'gross negligence' as used therein was intended to mean other than the 'gross negligence' defined in section 17 of the same act 'to establish a Civil Code,' which was simply 'the want of slight care and diligence.' This

must necessarily have been the view of this court in Donlon Bros. v. Southern Pac. Co., 151 Cal. 763, 766, 11 L. R. A. (N. S.) 811, 91 Pac. 603, 12 A. & E. Ann. Cas. 1118, for an examination of the record shows that there could have been no other ground for the expression of opinion 'that there was sufficient evidence in the case warranting the jury in finding that the defendant was guilty of gross negligence occasioning the loss and injury complained of.' * * *

"Accepting this definition of gross negligence, it cannot reasonably be contended that the evidence was not legally sufficient to support the finding of the trial court that the deceased was killed by the gross negligence of defendant's servants."

In the case of C., R. I. & P. R. Co. v. Stone, 34 Okla. 364, 125 Pac. 1120, the plaintiff at the time of the injury was a trespasser upon a regular passenger train of defendant company. The accident occurred in the west end of the railway yards at Yukon. The train on which he was riding was running at the rate of about thirty miles an hour when approaching the west end of the passing track at Yukon station. On this passing track were some twelve or fifteen cars, which in some way, not clearly shown, were permitted to run down grade to the switch block, and on to the main track and collide with the incoming passenger train, on which the plaintiff was riding. These loose freight cars struck the passenger car, thereby causing the injury complained of. Commissioner Sharp, in delivering the opinion, said:

"To leave a string of freight cars on such siding, not under control, and where the same, either by momentum or gravitation, might run down grade to where the siding connected with the mainline, and then upon the said main line, * * * . even though in the daytime, and at a time when a regular passenger train was due, would be proof to show such gross and wanton negligence and recklessness as would manifest a disregard of all consequences."

In Lake Shore & Mich. S. R. Co. v. Bodemer, 139 Ill. 596, 29 N. E. 692, 32 Am. St. Rep. 218, the facts were that the train which committed the injury was traveling at a speed of 35 or 40 miles an hour in the crowded city of Chicago, over street crossings upon unguarded tracks so connected with the public street and so apparently a continuation of the public street as to be regarded by ordinary citizens as located in the public street along a portion of the city tracks where persons were known to be passing and crossing every day, in conceded violation of the city ordinance as to speed and without warning of the approach of the train by the ringing of the bell. It was said by the court:

"This conduct tended to show such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness."

In the case of N. P. R. Co. v. Adams, supra, we find the following:

"It will be perceived that the question excludes injuries resulting from wilful or wanton acts, but applies only to cases of ordinary negligence."

¶If the court in the Adams case was not of the opinion that there were degrees in negligence, why use the language quoted? There has been nothing said or indicated by the United States Court, since the Adams case, so far as we have been able to find, to the effect that the provision in a free pass, waiving claims against the carrier for negligence, was intended to include every degree of negligence.

In Ill. Cen. R. Co. v. Geo. D. Read, 37 Ill. 484, 87 Am. Dec. 260, the first paragraph of the syllabus is as follows:

"A passenger, while traveling in the cars of a railroad, received injuries to his person occasioned by a collision of trains. At the time of the accident, the passenger was traveling under a free pass given him by the company, on the back of which was this printed indorsement: 'The person accepting this free ticket assumes all risks of accidents, and expressly agrees that this company shall not be liable under any circumstances, whether of negligence of their agents, or otherwise, for any injury to the person, or for any loss or injury to the property, of the passenger using the ticket.' In an action on the case against the company to recover damages for the injuries thus received by the passenger, it was held that this agreement did not exempt the company from liability for the gross negligence of its employees, but it did exempt it from liability for any other species or degree of negligence not denominated gross, or which might have the character of recklessness. For such unavoidable accidents as will happen to the best managed railroad trains, this agreement would be a perfect immunity to the company."

To the same effect see Toledo Wab. & W. R. Co. v. Harvey Beggs, 85 Ill. 80, 28 Am. Dec. 613. In Ind. Cen. R. Co. v. Mundy, 21 Ind. 48, the court said:

"Where a person traveling on a railroad receives from the company a free pass, upon which is indorsed a statement that, 'It is agreed that the person accepting this ticket assumes all risk of personal injury and loss or damage to property whilst using the same on the trains of the company,' such indorsement or agreement does not cast upon such person any risks arising from the gross negligence of the servants of the railroad company in running the train; and it would seem that such agreement does not cast upon such person any risks arising from any negligence

of the servants of the railroad company in running the trains."

To the same effect see Philadelphia & Reading R. Co. v. Derby, 14 How. 468, 14 L. Ed. 502; The Steamboat New World v. King, 16 How. 469, 14 L. Ed. 1019.

The evidence introduced at the trial in the case at bar tended to show that the car upon which plaintiff was riding could not have gotten on to the side track without the switch being open. The section foreman of the Santa Fe had a key to the switch and the trainmen had a key, and the evidence further tends to show that the foreman of the concrete gang working at the switch on the date of the accident also had a key. The train upon which plaintiff was riding was due at Bartlesville about 11 o'clock a. m. The question whether the action of the defendants, in leaving open the switch at that time, knowing that a passenger train might be expected at that hour, without ascertaining the location of the train and without having anyone looking after the switch, would be considered gross negligence, was a matter to be submitted to the jury under proper instructions. Under the evidence in the case, we are of the opinion that the jury was justified in finding the accident resulted from gross negligence on the part of defendants.

We recognize the rule is well established that the right of the carrier to stipulate for exemption from liability for its own negligence in regard to an interstate pass is not a local question, but is a matter for the federal courts. As we understand, the rule as enunciated in the case of M. P. R. Co. v. Castle, 224 U. S. 541, 56 L. Ed. 875, is as follows: A statute of the state where the injury occurred can be applied until Congress has acted in the matter. In the above case, the plaintiff based his right to recover upon a Nebraska statute, which undertook, among other things, to take away the defense of contributory negligence in cases of that character, when the negligence of the employer was gross in comparison to that of the employee, but the damages were to be diminished according to the negligence of the employee. The railroad company there contended that in respect to interstate transactions, this legislation could not control as the same violated the commerce clause of the Constitution. In delivering the opinion, Chief Justice White uses the following language:

"The repugnancy of the statute to the commerce clause of the Constitution was also averred on the grounds that 'the plaintiff at the time he received the injuries complained of * * * was engaged as an employee of an interstate railroad engaged in commerce between the states of Missouri, Kansas and Nebraska,' and the statute of Nebraska 'attempts to regulate and control, as well as create, a cause of action and remedy imposing upon the defendant company a liability inconsistent with and repugnant to the action of the Congress of the United States on said subject.' * * * And as at the time the plaintiff received the injury complained of, there was no subsisting legislation by Congress affecting the liability of railway companies to their employees under the conditions shown in this case, the state was not debarred from thus legislating for the protection of railway employees engaged in interstate commerce."

If Congress has ever enacted a statute relative to interstate free passes, defining the degrees of negligence, we have been unable to find the same, nor have we been cited to any by counsel; therefore, we see no reason why the Oklahoma statute that a "common carrier cannot be exonerated by an agreement from liability for gross negligence, etc.," would not be applicable to the case at bar. Certainly the decisions of the federal court quoted supra, clearly seem to contemplate that even in the absence of any state statute, the common carrier could not be exonerated by any agreement as against the gross negligence, fraud, or wilful wrong of itself or its servants.

The defendants complain of instructions Nos. 5, 6, 9, 10, and 13, which are as follows:

(5) "Under the law of this state, gross negligence, as is used in these instructions, is defined as the want of slight care and diligence. It is the doing of some act or thing which a person of ordinary prudence and intelligence would not do under the circumstances, or the failure to do some act or thing which a person of ordinary prudence and intelligence would do under like circumstances. Should such conduct or acts be of such a nature as to amount to a gross want of care and regard for the rights of others, it amounts to wilfulness, and it is not necessary, in order to raise an inference of such negligence, to prove that the defendant's servants were actuated by ill will directed specially towards the plaintiff, or to have known that she was in such position as to be likely to be injured."

(6) "Slight care and diligence as used in these instructions is such care and diligence as persons of ordinary prudence usually exercise about their own affairs of slight importance."

(9) "You are instructed that the defendants owed to the plaintiff the duty of conveying her from St. Louis, Mo., to Oklahoma City, Okla., using ordinary care and prudence to so maintain and operate their trains, lines of railroad and roadbed, switches and yards, as to make them reasonably safe for travel

by the public in general, without regard to whether the plaintiff was riding on a pass or not."

(10) "You are instructed that the Acts of Congress relative to interstate commerce authorize and permit carriers to issue free passes to dependent members of the family of employees of railroad companies, and to stipulate in such passes that the person using the same for. transportation shall assume all risks of accident, injury and damage, whether resulting from the ordinary negligence of the servants and agents of the company issuing the pass, or otherwise, but in this connection, you are instructed that the law does not permit the defendants to contract against injury resulting from the acts of their employees amounting to gross negligence, or a wanton disregard of the rights of others."

(13) "You are therefore instructed that should you find from the evidence in this case, by a fair preponderance thereof that the plaintiff was riding upon a passenger train of the Katy Railroad Company on the 24th day of September, 1914, over the railroad line of the defendant Santa Fe Railroad Company, and that the servants, agents or employees of the defendants, or either of them, were not in the exercise of slight care and diligence to keep the lines and appliances in and about the yard in the city of Bartlesville in a reasonably safe condition for traffic, but were guilty of gross negligence as defined by these instructions in opening and permitting to remain open a certain switch, and that said train ran into said open switch and collided with a freight train standing upon said switch or side track, and that thereby plaintiff was injured, it will be your duty to find for the plaintiff, and if you fail so to find, you will return a verdict for the defendants."

The court may have been in error in giving instruction No. 9, but it is a settled rule in this jurisdiction that instructions must be construed as a whole and together, and it is not necessary that any particular paragraph thereof contain all the law of the case. It is sufficient if when taken together and considered as a whole, they fairly present the law of the case, and there is no conflict between the different paragraphs thereof, and while an instruction standing alone may be subjected to the criticism of being indefinite and uncertain, yet if other instructions fairly submit the material issues to the jury, reversible error is not committed. Ponca City Ice Co. v. Robertson, 67 Oklahoma, 169 Pac. 1111; Lonsdale v. Schlegel, 68 Oklahoma, 171 Pac. 330; Newton v. Allen, 67 Oklahoma, 168 Pac. 1009.

The judgment of the trial court is affirmed.

All the Justices concur.