**CHICAGO, R. I. & P. R. CO. v. HUMPHREYS.**

No. 3747.

United States Court of Appeals
Tenth Circuit.

Feb. 4, 1949.

Leonard Savage, of Oklahoma City, Okl. (Savage, Gibson & Benefield, of Oklahoma City, Okl., on the brief), for appellant.

A. Francis Porta, of El Reno, Okl., for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Jessie L. Humphreys, filed this action in the District Court of Canadian County, Oklahoma, against the Chicago, Rock Island and Pacific Railroad Company for damages for personal injury suffered by her while riding on one of defendant's trains. The case was removed to the United States District Court for the Western District of Oklahoma where it was tried to a jury. A verdict was returned for plaintiff and judgment was entered thereon and this appeal followed. The parties will be referred to as plaintiff and the Railroad.

Plaintiff was the wife of Earl Humphreys, an employee of the Railroad. Both held passes entitling them to ride on certain of the Railroad's passenger trains without payment of passenger fare. One of the conditions of the pass was that neither the Railroad, its trustees, nor successors in ownership would be liable for damages to the user of the pass for injury suffered whether such injury was due to negligence or otherwise and that the user released the Railroad from all claims and causes of action for any such damage. Such passes were good on the Railroad's regular trains but were not good on its Rocket trains. However, under promulgated regulations, upon the presentation of such a pass, the holder was entitled to ride on the Rocket trains by purchasing a ticket at half fare. When presenting such ticket to the conductor, the pass holder was also required to show his pass.

Insofar as material, the facts surrounding the injury to plaintiff are as follows. Plaintiff purchased a half-fare ticket from Chickasha, Oklahoma, to El Reno, Oklahoma, and rode the train on her pass. The ticket purchased by plaintiff was signed by her, referred to her pass and was subject to the conditions thereof. After the train stopped at El Reno, she left her seat in the rear of the car and followed other passengers down the aisle to the exit at the end of the car. Leading from the coach to the vestibule platform was a door which opened inward into the car. The door was equipped with a Russwin No. 400 automatic door closer and catch by which it could be held open. The door was not fastened back in an open position so that it was necessary for the passengers as they went through the door to hold it open. As plaintiff approached the door, she was immediately behind a crippled woman walking with crutches. As plaintiff reached the door she took the door from the passengers ahead of the crippled woman and held it open by leaning against it while the crippled woman passed through the door. Since what occurred at this point is vital to the issues in the case, we set out the material part of plaintiff's testimony verbatim.

On direct examination, plaintiff testified as follows:

"Q. As I understand you to mean, you leaned against it as you edged your way up to the door?—A. Yes, sir.

"Q. What happened when you got to that point in that door?—A. Well, I thought there was someone behind me coming out after us, and I moved on, and I got to this threshold, I kept standing there—

"Q. Why did you keep standing there?—A. I couldn't get out.

"Q. Why couldn't you get out?—A. Because this crippled woman was still in front of me.

"Q. Do you know where the porter was at that moment?—A. Well, he was down on the platform at the station.

"Q. On the ground?—A. On the station platform.

"Q. Was there anyone there to assist the one-legged woman?—A. No.

"Q. Was there anyone there who offered to assist you?—A. No.

"Q. Go ahead with your story.—A. When I got to the door, and in trying to ease my way on out, the first thing I knew,

this door had caught my hand. I was stepping back from the old crippled woman.

"Q. Why did you have to step back?—A. The passage way is narrow in there, and I stepped back.

"Q. What did you do with your right hand when you stepped back?—A. I put it up this way on the door, to protect myself, and I thought the door hit me.

"Q. Protect yourself from what?—A. From falling.

"Q. What was there that would have made you fall?—A. Well, that threshold there.

"Q. Do I understand you to mean that the crippled woman fell back towards you, or leaned back towards you, or the crowd pushed back toward you?—A. Yes. When I was going back, I asked this old crippled lady to get out of my way.

"Q. Was that before or after your hand was crushed?—A. After my hand was crushed."

On cross examination, plaintiff testified as follows:

"Q. As I understand your testimony, you approached the door which opened to your left and in order to hold the door back for the lady in front of you and then in order to go through yourself, you had your purse under your left arm and your hand bag in your left hand, you leaned up against the door to hold it open?—A. Yes.

"Q. And you moved forward as the traffic moved until you came out onto the vestibule and the crippled lady backed up on you and caused you to step back, and you reached up on the door sill or door jamb with your right hand?—A. Yes, sir.

"Q. And then the door came to on your hand?—A. Yes, sir.

"Q. And that is how you got hurt?—A. Yes, sir.

"In other words, when this lady backed up to you, you backed up and that is what caused you to get hurt?—A.. Yes."

Three points are urged for reversal. They will be considered in the following order:

1. Failure to fasten the door back did not constitute negligence on the Railroad's part.

2. Plaintiff was guilty of contributory negligence.

3. The limitation of liability in the pass, incorporated into such one-half fare ticket, was a bar to plaintiff's right to maintain her action in any event.

The question whether the Railroad's failure to fasten back the door constituted actionable negligence has not been decided by the Oklahoma courts. No case is cited in the briefs and our search has failed to reveal one in which it has been held that it is actionable negligence for a railroad to fail to fasten back the door to a coach, after the train has stopped at a station, to permit the passengers to detrain. In a number of cases it has been held not to constitute negligence for the railroad to fail to fasten a door while passengers were discharging. In a number of others, non-liability has been based on the ground that the injury was the result of an accident.

The facts in MacGill-Allen v. New York, N. H. & H. R. Co., 229 Mass. 162, 118 N.E. 248, where a directed verdict was upheld, are almost identical with the facts in this case. Plaintiff's hand was injured by the closing of a car door as she was leaving the car to detrain. There was evidence in the case that as the passengers went out, they held the door. There was no showing whether there was a catch to hold the door in place when open and no evidence of any defect in the door or its appliances. The court held there was no evidence of negligence warranting the submission of the case to a jury.

A similar result was reached on analogous facts in Casey v. New York, N. H. & H. R. Co., 207 Mass. 443, 93 N.E. 926.

Christensen v. Oregon Short Line R. Co., 35 Utah 137, 99 P. 676, 679, 20 L.R.A., N.S., 255, 18 Ann.Cas. 1159, is an analogous case. There, as here, a passenger had her hand crushed in a swinging door while awaiting her turn to alight at a station. Among other things, it was alleged that the accident was caused by reason of the door not being firmly held in place. We feel that the language of the court in that case is sufficiently illuminating to warrant quoting therefrom. The court said:

"Can it be assumed that the appellant was negligent in not seeing that the door, was placed back sufficiently to interlock with the catch? This, it seems, would be wholly unreasonable. Car doors, as a matter of common, if not universal, knowledge, are not entirely under the control of the employes of the railroad company, but are used at pleasure by the passengers for the purpose of passing in and out of the car, or in passing from car to car. If, therefore, it be said that it is the duty of the railroad company to see that every car door is fastened back when it is opened, it must follow that the company must station a servant at every door to attend to the fastening of it in case the passing passenger either leaves it unlatched in closing it or unfastened to the back catch when opening it. To merely have a servant fasten the door, and then leave it, would be of little, if any, use, since any passenger might unfasten it the next moment. If the law does not impose the duty upon the railroad company to keep a constant watch upon the car doors, then no negligence is shown in this case. * * * When it is remembered that doors are made to swing upon their hinges for the purpose of opening and closing at any time, then the closing of a door is such a usual and natural occurrence that no negligence can be inferred from the simple fact that the occurrence took place."

A swinging door was involved in Brehm v. Atchison T. & S. F. R. Co., 111 Kan. 242, 206 P. 868, 25 A.L.R. 1056. A judgment in favor of a passenger whose hand was hurt in the door was reversed on the ground that no negligence was shown. The Kansas court in such cases has generally predicated its decision of non-liability on the ground of accident rather than non-negligence.

In Winter v. Pennsylvania R. Co., Del., 57 A.2d 750, 752, the plaintiff alleged that after the train started he discovered he was on the wrong train; that he informed the conductor thereof who offered to have the train stopped in order to let plaintiff return to the station; that the conductor directed plaintiff to follow him to the front of the train, and then proceeded forward and opened the forward door of the coach in which plaintiff was riding; that on passing through the door, the conductor left it open and unsecured in any way so as to prevent the door slamming shut upon a sudden lurch; that plaintiff followed the conductor and in passing through an open door, he placed his left hand upon the door jamb to steady himself; that about this time the engineer stopped the train, upon signal by the conductor; that there was a sudden lurch or jolt, the door slamming shut, catching and injuring plaintiff's hand. The negligence charged was in leaving the door unsecured and in causing the train to lurch with the door so unsecured. The court alluded to the fact that the railroad was under no duty to furnish an escort to passengers passing through doors, nor to station a door man at each door to minimize the risk, nor to keep such doors continuously closed, or continuously open during travel. It pointed out that plaintiff had no reason to believe that the door was closed; that it was self-evident that such a door might swing, and might slam shut, and that the defendant was not required to warn the plaintiff of anything so obvious; that the situation demanded prudence and appropriate precautionary action by plaintiff himself to avoid injury.

■ The question whether plaintiff made out a prima facie case of actionable negligence is very close. But the decision in any event does not depend upon whether the failure to securely latch the door in place constituted actionable negligence, because we think that from the facts it clearly appears that plaintiff was guilty of contributory negligence. Some of the cases infer and others by direct statement hold that one who knowingly places his hand in a position of danger, knowing that the door is not secure is guilty of negligence. Thus, in the Winter case, supra, the court said:

"Defendant was not obligated to warn plaintiff of something so obvious. On the contrary, the situation demanded prudence and appropriate precautionary action by plaintiff himself to avoid injury from such plainly foreseeable swinging of the door * * *."

The question of contributory negligence was summarized by the Supreme Court of Minnesota in Leban v. Range Rapid Trans-

it Company, 167 Minn. 40, 208 N.W. 533, 535, as follows:

"There is a clear distinction between the cases where the plaintiff, by a sudden lurch or swinging of the vehicle, was thrown 'off balance' and laid hold of a door or door jamb to prevent a fall, and those where he deliberately and without any excuse of emergency placed his hand or other portion of his person in the position of danger. In the former contributory negligence is not found as a matter of law. (Citing cases.) In the latter class of cases the result usually is otherwise."

In the Brehm case, supra, [111 Kan. 242, 206 P. 871] the Kansas court said:

"The only negligence of the defendant as found by the jury was the brakeman's failure to fasten the door back securely. That hardly amounted to the gravity of negligence at all; but if it be so held, it was an act of negligence of which the defendant was well aware, and, knowing that the car door was swinging freely and unfastened, it was her duty to use reasonable prudence on her own behalf to avoid being injured by this negligence of the defendant. In the sense that the defendant was negligent, plaintiff was likewise negligent; and, if defendant is held by such subtle strictness to the consequences of negligence, the plaintiff, with much less subtlety, must likewise be held guilty of contributory negligence."

In Texas & Pacific Ry. Co. v. Overall, 82 Tex. 247, 18 S.W. 142, a passenger on a train which had stopped at a station placed his hand on the jamb of the car door. A judgment for plaintiff was reversed on the ground that plaintiff was guilty of contributory negligence in placing his hand in such a position where the closing door would injure it.

In L'Hommedieu v. Delaware L. &. W. R. Co., 258 Pa. 115, 101 A. 933, the Pennsylvania court refused to pass upon the question of plaintiff's contributory negligence in placing his hand in the door jamb, but stated that plaintiff, at least, assumed the risk of what happened when he did so at a time when the train was preparing to stop.

In Brinegar v. Louisville & N. R. Co., 24 Ky.Law Rep. 1973, 72 S.W. 783, the court in effect found that there was no negligence on the part of the Railroad Company, but that there was contributory negligence on the part of the plaintiff in placing his hand in a position where a closing door would injure it.

We think, when plaintiff's testimony is considered in its entirety, the conclusion must be that she was not faced with an emergency, nor was she hurled or suddenly forced back, and in such an emergency threw up her hand to protect herself. Giving her testimony its fair interpretation, it is that she stepped back and to steady herself so as not to fall placed her hand on the jamb of the door. Thus when she was asked to tell her story she said when she got to the door "and in trying to ease my way out, the first thing I knew, this door had caught my hand. I was stepping back from the crippled woman." When asked why she had to step back, she replied that "the passage way was narrow in there and I stepped back," and that in stepping back she put her hand on the door to protect herself from falling. She was then asked, "What was there that would have made you fall," to which she replied, "Well, the threshold there." This is the ordinary and usual situation which on innumerable occasions confronts passengers when leaving a railroad coach. On, no doubt, times untold passengers, for one reason or another, are compelled to step back and in so doing seek support by the use of their hands. She knew that the door was unlatched because she had held it open for the woman preceding her. She knew that the door was closing and under such circumstances it was negligence on her part to place her hand in a position where the closing door would injure it.

Plaintiff takes the position that an emergency was created by the crippled woman falling or leaning backward against her. When her attorney, by a leading question, asked, "Do I understand that the crippled woman fell back toward you or leaned back toward you or the crowd pushed back toward you?", her answer was, "Yes. When I was going back, I asked the crippled woman to get out of my way", and in answer to another question, she replied that this occurred after her hand had been injured.

So even in response to these leading questions, there is no showing that the crippled woman either suddenly fell or leaned back against plaintiff, thus creating an emergency causing her to act instantaneously and without an opportunity to exercise the usual and ordinary caution or prudence required under such circumstances.

Having reached the conclusion that plaintiff's contributory negligence bars a recovery, it is not necessary to decide, as urged by plaintiff, that it was negligence on the railroad's part to fail to furnish help to the crippled woman to assist her in leaving the train.

For the same reason, it is not necessary to pass on the Railroad's contention that the provisions of the pass incorporated into the half-fare ticket absolving the Railroad from liability for injury or death, no matter whether such injury or death was due to negligence on its part, bar a recovery. Oklahoma, in line with New York and other States, has held that such provisions in a pass are valid and do not offend against the public policy of its state.[1] Oklahoma has not had occasion to pass upon the question whether such provisions in a part-fare ticket used in connection with the pass are likewise valid.[2] Since this question is one of Oklahoma law, in the absence of an expression from Oklahoma courts and the resolution of this question not being essential to the decision of this case, we feel we should not pass upon this point, but rather await a decision thereon by the courts of Oklahoma. We, therefore, rest our decision on the sole ground that the undisputed evidence makes a case of contributory negligence as a matter of law which bars a recovery.

The court erred in not sustaining the Railroad's motion to dismiss and its motion for a directed verdict.

Reversed.

---

[1] See Atchison T. & S. F. Ry. Co. v. Smith, 38 Okl. 157, 132 P. 494, Ann.Cas. 1915C, 620; Missouri K. & T. Ry. Co. v. Zuber, 76 Okl. 146, 184 P. 452, 7 A.L. R. 840; Smith v. Atchison, T. & S. F. Ry. Co., 8 Cir., 194 F. 79; Anderson v. Erie R. Co., 223 N.Y. 277, 119 N.E. 557; Wells v. New York C. R. R. Co., 24 N. Y. 181.

[2] New York and similar states hold that such provisions in the pass do not offend the public policy of their states, and also hold that similar provisions in special fare contracts are likewise valid. New York has upheld such provisions in all special fare cases. Ulrich v. New York C. & H. R. R. Co., 108 N.Y. 80, 15 N.E. 60, 2 Am.St.Rep. 369, and authorities cited in note 1.