## Chesapeake & Ohio Railway Company v. John's Administratrix.

(Decided October 14, 1913).

### Appeal from Shelby Circuit Court.

1. Railroads—When Gross Negligence for One Train to Run Upon Schedule of Another—Exemplary Damages.—It is gross negligence for one train to run upon the schedule time of another without orders so to do; and when it does, and injury results, the assessmnt of substantial exemplary damages is authorized.

2. Damages—Separation of Compensatory and Exemplary Damages in Verdict.—If a party desires compensatory and exemplary damages separated in the verdict, he must request such separation.

3. Damages—When Verdict of $25,0000 Not Excessive—Negligence.— Where the negligence is flagrant, and endangers many human lives a verdict of $25,000 for both compensatory and punitive damages will not be deemed excessive in a case where a young man thirty four years of age, in good health, of good habits, and earning about $120 a month, is killed.

WILLIS, TODD & BOND, SHELBY & SHELBY, O'REAR & WILLIAMS and C R. McDOWELL for appellant.

ROBT. B. FRANKLIN, ROBT. C. TALBOTT and RALPH GILBERT for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

The C. & O. Railway Company under a contract with the L. & N. Railroad Company uses jointly with the latter its railroad tracks running from Lexington to Louisville.

On the afternoon of January 16th, 1912, a regular L. & N. passenger train bound from Lexington to Louisville, and a special or "dead train" of the C. & O. Railway Company bound from Louisville to Lexington, met in a collision at a point in Shelby county.

The L. & N. train was a regular passenger train, had the right of track, and was running practically on time, being at the time of the collision about two minutes late; the C. & O. train was a special or "dead train," consisting of the engine and two coaches carrying only a crew. The engineer and fireman on each train was killed, and this suit was instituted by appellee as personal representative of decedent, who was fireman on the L. & N. train, against both defendants, charging that her intestate came to his death by the gross and concur-

rent negligence of the two defendants. After the introduction of all evidence in the circuit court the action was dismissed as to the L. & N. Railroad Company without prejudice and without objection upon the part of appellant. The jury found a verdict for $25,000 for the plaintiff against C. & O. Railway Company upon which judgment was rendered, and the company appeals.

The uncontradicted facts as given by the conductor of the L. & N. train, the train dispatcher, and the telegraph operator at Anchorage, are:

. The L. & N. train was a first class passenger train and had the right of the track, being at the time of the collision only two minutes late which is regarded by railroad men as "on time."

The C. & O. train was a "dead train" running as a freight, and it was its duty to keep the track clear for regular trains at all times—that is to take a side-track or switch in time to clear the track at least five minutes before the schedule time of the regular train; that at Anchorage, a few miles nearer Louisville, the C. & O. trainmen had received orders about the movements of certain trains, and both the conductor and engineer of that train had been there told that No. 15, the regular L. & N. passenger train with which it collided, *was on time and came by the way of Shelbyville,* which was the same track the C. & O. train was going on from Anchorage; that between Anchorage and the point of collision the C. & O. train had three opportunities to side-track for the L. & N. train; that at the time of the collision the *C. & O. train had been for five minutes running on the schedule time of the regular L. & N. train;* that under the rules it was the duty of the C. & O. train to have gone in on the side-track at Eastwood, the second side-track out of Anchorage.

Appellant declined to introduce any evidence, although it appears that the conductor, who was on the C. & O. train at the time of the collision, and was present when notice was given at Anchorage that No. 15 was on time and came by the way of Shelbyville, was still living.

Appellant relies upon three reasons for reversal:

(1) That it was erroneous to authorize a recovery for punitive damages; that to authorize such recovery there must be knowledge by the tort feasor or his principal that his act or omission to act was wrongful; that is the injury must have been intentionally inflicted or

caused by such careless conduct as indicated an intentional disregard of the safety or the rights of others;

(2)    That it was the duty of the court to have directed the jury by instruction to separate in its verdict the exemplary and compensatory damages, without request from either party.

(3)    The damages were grossly excessive.

The argument is that there being no direct evidence that the conductor or engineer of the C. & O. train knew that the L. & N. train which formerly went to Louisville from Lexington by a different route was on the day in question going to Louisville over the track upon which it (the C. & O. train) was traveling, that they did not therefore know at the time of the collision that they were running on the time of that train; and that not knowing the facts there was no intentional wrong doing which authorized the assessment of exemplary damages. But the uncontradicted evidence is that the L. & N. train had been taking that route to Louisville for six or eight months at the time of the collision, and that the C. & O. engineer had been all that time running a freight train over that road, and that both the conductor and engineer had been shortly before notified, not only that No. 15 was on time, but was coming by the way of Shelbyville over the same track the C. & O. train was going. It it true that under the facts of this case it is hard to reconcile the knowledge of the C. & O. engineer that he was running on the time of the L. & N. train with the fact that at the same time he was rushing headlong to his own death. But, the facts are in the record and cannot be evaded; not only are the trainmen positively presumed to have known the schedule time of all trains on the road; not only are they presumed to have the schedule before them at all times, but in this case we have the uncontradicted testimony that a few short moments before the collision both the conductor and engineer of the C. & O. train had been notified that L. & N. train No. 15 came by that route and was on time.

The safety of the traveling public demands that all trainmen shall be familiar with the schedule of all trains on the same road and have it constantly in mind. The rules required that the C. & O. train should have cleared the regular train by going on a side-track at least five minutes before the schedule time of the regular train at that point; and the C. & O. train had three—certainly two—opportunities to have done this between Ancho-

rage and the point of collision. But assuming for the sake of the argument as suggested by appellant's counsel that both the conductor and engineer of the C. & O. train had a strange lapse of memory and for the moment forgot that L. & N. train No. 15 was on that route, and did not know that they were running on its time, would it be a proper safeguard of the rights of the traveling public to say that the company was not grossly negligent by reason of their unaccountable lapse of memory, and, therefore, not liable for exemplary damages because there was nothing intentional about the infliction of the injury? The theory of the infliction of punitive damages is that they are imposed as a sort of civil punishment by reason of the aggravated circumstances attending the injury, and as a sort of civil penalty so that its infliction may operate as a deterrent of similar occurrences in the future. It would not be consistent with this theory to adopt a rule that would exempt a railroad company from such civil punishment, where the lives of hundreds of persons were involved, merely because its trainmen forgot the schedule time of another train on the same road, and encroached upon it. That state of mental inactivity which induced the forgetfulness, where so many human lives were involved, is of itself the grossest negligence. In view of the hundreds of thousands of people that ride on railroad trains each day, the company should be punished by the payment of smart money under such conditions. It is an imperative duty to protect the traveling public from the recklessness of irresponsible and thoughtless trainmen.

But it is not the rule in this State that the injury must result from an intentional wrongdoing to authorize the recovery of exemplary damages. In McHenry Coal Company v. Sneddon, 98 Ky., 684, the rule is thus stated:

"Where the facts conduce to show reckless, willful, or malicious conduct on the part of the party charged with the wrong, exemplary damages may be awarded."

In Central Kentucky Traction Company v. May, 126 S. W., 1093, the rule is thus laid down:

"Punitive damages are not authorized and should never be allowed, in any case, where there is not some evidence tending to show that the defendant has acted maliciously, willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others (Koestel v. Cunningham, 97 Ky., 421), or, where there is an absence of malice or reckless conduct on the part

of the defendant indicating a purpose to have plaintiff injured, or of a reckless disregard of the safety of plaintiff's person (McHenry Coal Co. v. Sneddon, 98 Ky., 684)."

But the latest declaration of the court, after a review of all the authorities, is in L. & N. Railroad Company v. Wilkens, 143 Ky., 572, where it is said:

"From these repeated adjudications the rule would seem to be firmly established in this jurisdiction, that punitive damages are recoverable only where the defendant has acted wantonly or recklessly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations."

It requires no argument to show that the admitted facts of this case bring it well within any one of these rules.

Certainly it was reckless conduct in the trainmen in the charge of the C. & O. train to encroach for five minutes upon the time of the regular L. & N. train without any orders so to do: certainly it was reckless disregard of the lives of all persons on both trains; certainly such conduct evidenced a reckless, if not criminal, indifference to the safety of all persons on both trains.

It would seem useless to argue that in such an aggravated case of gross neglect as the admitted facts of this case show, it would be improper to assess punitive damages.

The very definition of gross neglect, which this court has so often approved; that is, that it is a want of slight care, when applied to the facts of this case is conclusive of the question. The collision would not have occurred if the C. & O. trainmen had not recklessly run on the time of the L. & N. train; it would not have occurred if they had gone in on one of the three switches between Anchorage and the point of collision; it would not have occurred if they had paid the least attention to the notice given them by the dispatcher at Anchorage; it would not have occurred if they had for an instant examined the schedule of the L. & N. train; in fact it appears to have been, in the absence of any explanation, the most unnecessary sacrifice of human lives, without excuse or palliation. And if there had been any reasonable explanation of the cause leading up to it, certainly appellant would have introduced the conductor of its train, who, of all living persons, was in the best position to give such explanation. It was pure recklessness to run

on the time or another train without orders from the train dispatcher; and it does not lessen the character of this recklessness to say, that the C. & O. trainmen *had forgotten* that the L. & N. passenger train was running on that route.

Appellant made no request on the trial for the separation in the verdict of the punitive from the compensatory damages; but now insists that it was the duty of the court to have required this of the jury without such request, relying upon the L. & N. Railroad Company v. Scott, 141 Ky., 548. But the court in that case did not hold that it was the positive duty of the court to give such instruction in the absence of request, but merely said that it would be "advisable and proper" for trial courts in such cases to instruct the jury to separate the two kinds of damages in their verdict; it is not said or even suggested that it would be reversible error if it failed to do so without request. Appellant had a right to have these damages separated in the verdict, but it waived that right by its failure to ask that it be done.

The decedent was thirty-four years of age at the time of his death, a vigorous and healthy man earning from $115 to $120 a month, and there is no suggestion in the record that his habits were other than good. Naturally, a man of such age, health and habits, had a reasonable prospect of promotion and higher wages. The remaining question is, under the admitted facts, is the verdict excessive.

Manifestly some part of the amount assessed by the jury was exemplary damages, but how much we are left to speculation. The courts of this State have been very conservative in the amount of damages which they permit to be assessed in personal injury cases; but of late years in view of the decreased purchasing power of money, it has shown a disposition to approve larger verdicts. In the case of C., N. O. & T. P. Railroad Company v. Lovell's Administrator, 141 Ky., 249, a verdict for $15,000 as *compensation alone was upheld.*

The case of L. & N. Railroad Company v. Melton, 127 Ky., 276, was where a carpenter was injured in Indiana and the suit instituted in Kentucky under the Indiana Statute. In that case no punitive damages were authorized and yet this court upheld a verdict for $22,000 for a personal injury, although the plaintiff was earning only $3 a day at the time he was injured. In the case

of the L. & N. Railroad Company v. Setser's Administrator, 149 Ky., 162, a verdict for compensatory and punitive damages combined for $20,000 was upheld by this court. There the decedent was a young man of twenty years of age, in good health, and earning about $2.50 a day; but the evidence disclosed that at the time he was ejected from the train he was both drunk and disorderly so that his habits could not have been exemplary.

The verdict in this case is very large; but the undisputed facts show such an aggravated case of recklessness and utter disregard of the lives and personal safety of hundreds of people, that we are unable to say that such an amount as we would have approved for compensatory damages alone when taken from the total amount of the verdict would leave too high a sum for exemplary damages. In the Setser case a substantial sum for punitive damages was allowed because the trainmen pushed the decedent off a moving train at night in a dangerous place, thereby endangering one human life; whereas in this case we have circumstances showing almost criminal negligence which endangered the lives of hundreds of people, and cost the lives of four.

Judgment affirmed.