Bowman *v.* Pennsylvania R. R., Appellant.

559

Argued February 3, 1930. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Edgar Downing,* with him *Otto E. Farquhar,* for appellant.—The stipulation in the free annual pass precluded recovery regardless of the grade of negligence: Kansas City So. Ry. v. Van Zant, 260 U. S. 458; Northern Pac. Ry. v. Adams, 192 U. S. 440; Boering v. Ry., 193 U. S. 442; Charleston, etc., Ry. v. Thompson, 234 U. S. 576.

There is not sufficient evidence in the case to warrant a verdict or judgment based on wanton, wilful or gross negligence: Di Meglio v. Ry., 249 Pa. 319; Wright v. Transit Co., 236 Pa. 132; Funk v. Kerbaugh, 222 Pa. 18; Phila. City Pass. Ry. v. Henrice, 92 Pa. 431; Buck v. Cab Co., 75 Pa. Superior Ct. 440.

*Roscoe R. Koch,* with him *A. Julian Pilgram* and *Charles A. Ludlow,* for appellee.—With the passage of the Hepburn Act, 1906, the issuance of passes by inter-

state carriers became a field where congress had exerted its control (Kansas City S. Ry. Co. v. Van Zant, 260 U. S. 459). As a consequence, the act of congress was exclusive and dominant and state control everywhere yielded to national power in interstate transportation, for the act specifically sets up that its provisions shall not apply to movements wholly within one state.

The act did not cover the field of damages. The law is silent on that phase of the use of a pass.

The carrier, by the terms in the pass, can absolve itself from liability for ordinary negligence by the releasing clauses, which appear in all railroad passes; they will be given no force and effect if there is present wilful and wanton negligence on the part of the carrier: New York Cent. R. R. v. Mohney, 252 U. S. 152; Pacific Ry. v. Adams, 192 U. S. 440.

The jury by its verdict in favor of the widow for $12,000 against the carrier must have come to the determination that the carrier was guilty of wilful and wanton negligence: New York Cent. R. R. v. Mohney, 252 U. S. 152; Cover v. Transit Co., 290 Pa. 551.

OPINION BY MR. JUSTICE SADLER, March 17, 1930:

Charles F. Bowman, deceased husband of plaintiff, was a traveler on a special-fare train of the Pennsylvania Railroad, defendant, known as the Cincinnati Limited, which was moving east on the night of June 16, 1926. His journey began in Columbus, Ohio, and had for its destination the City of Philadelphia, an interstate trip. Bowman's transportation was furnished without compensation on a pass issued by reason of his employment as a general agent of the Erie Railroad, and subject to a stipulation appearing on the back thereof, which reads in part: "The user expressly assumes all risk of accidents, and of personal injury, regardless of their causes, and absolves the company from all liability therefor."

Preceding the Cincinnati Limited from Pittsburgh to the east, on the same track, on the night of the accident, was a slower passenger train, bound for Washington, D. C. The latter had passed the signal post at Gray Station, and also the next fixed place of warning, in the direction toward which it was moving, located some 3,847 feet farther on. When it had gone roughly 800 feet beyond the latter point, some defect in the machinery made necessary its stopping. As required by the rules, the brakeman went back to place the necessary torpedoes and fusees on the track as a notice to any oncoming train. When on this errand, he did not observe the usual red-light on the bridge just passed which would direct the engineer of a following train to stop. The signals which he supplied were visible when the engineer of the Cincinnati Express had reached a point 700 or 800 feet west of them. As the track rounded a curve along an embankment, sight for a greater distance was impossible. When first seen, the emergency brakes were at once applied, but, owing to the weight of the train, drawn by two engines, and the down-grade, the express following could not be stopped until it had passed the second signal post as well as the torpedoes and fusees placed by the brakeman of the Washington train, who likewise made efforts to warn of the impending danger with his lantern. The second train crashed into the rear of the one in front, causing great damage and considerable loss of life, including the death of three of the four persons tending the two engines of the Cincinnati Express which collided with the one destined for Washington. The only surviving employee working on the former was one McConnell, a fireman, and a witness at the trial in the present case.

Bowman was among those killed, and his widow instituted this suit to recover damages, alleging, in the amended statement, a "failing of the operating crews of train No. 40 [the Cincinnati Express] to obey signals in time to stop their train before collision; also oper-

ating their train at dangerously high speed following behind another train." As to the second allegation, the learned court in its charge properly instructed the jury: "At this point I want to say to you that the mere fact that this train was traveling sixty miles an hour, being an extra-fare train of the Pennsylvania Railroad, with a very swift and rapid schedule of time for it to perform in going from station to station, is, of itself, absolutely no evidence of negligence on the part of the Pennsylvania Railroad Company, for the economic, industrial and social conditions of the United States require rapid transportation, so that the running of this express train at a high rate of speed, out in the open country, in the rural sections of the State, does not in any way indicate negligence, and should not be so considered by you."

The right to recover against defendant was submitted, however, on the theory that the crew of the second train had passed a caution signal at Gray Station, three-fourths of a mile to the west, and, as a result, should have had it under such control as to stop at a red signal 800 feet from the Washington train, but there was no affirmative proof that the light at Gray Station showed yellow, as claimed by plaintiff, at the time the second train passed it. The failure to see in time the warning given by the brakeman of the front train, and a red light at the entrance of the second block, was held to indicate wilful or wanton negligence, if found true by the jury, and to establish such reckless disregard of duty as to make possible a verdict for plaintiff. At the trial, no evidence for plaintiff was produced to show the presence of a red light at the second signal post, since the witness called on her behalf did not observe it until after the accident occurred, during which time the express had entered the block where the collision took place, but evidence was offered to establish the acts of the brakeman of the first train, intended to give notice to those in control of the one following. McConnell, a witness for defendant, testified, however, he observed a red signal

at the second post when he came to a point within about 700 feet of it. The traffic engineer of defendant also said that the signal system was designed to show red when a train was in the block, and, under such circumstances, a caution notice should show at the preceding station, but no one swore it did, or testified that such a yellow signal was displayed when the second train passed that point. The only witness as to this was the surviving fireman of the Cincinnati Express, already referred to, who said the light at Gray Station was green, signifying a clear right of way. In this he was not contradicted, and there is no evidence that the contrary was true. To find this it would be necessary to presume from the evidence of the civil engineer, who was not present at the time of the occurrence, that a yellow or caution light did appear at the first place named if the second was red, since the system was designed to so provide.

The burden of proof to show the facts necessary to recover was, of course, on the plaintiff, and though the positive testimony of the fireman, that he saw the green light which indicated a free track, be entirely disregarded, since this appeal is from a refusal to enter judgment after verdict for the plaintiff, the only evidence that it was yellow rests on the assumption that the device was properly working at the time, and therefore necessarily indicated the caution sign to the west, if the second was red. Without affirmative proof of this preliminary warning, and its disregard by the employees of the second train, the plaintiff did not establish her case. To find it from the evidence of record, the jury would have to guess that the electrical appliances were operating at the time without any temporary defect therein. In this connection it will be remembered that the brakeman of the Washington train did not see any red light at the signal post when he went back to give warning to any approaching train. No witness for the plaintiff said the caution signal was displayed at Gray Station when the second train passed, and the only one who was

observing swore it was green, indicating the right to proceed, as no train was then on the same track, in that block. The first notice of the existence of a contrary condition came when the second train was 800 feet from the red light and the fusees placed by the brakeman, and then the emergency brakes were immediately applied, but, because of the descending grade, the heavy train, moving at its scheduled speed, could not be stopped in time to prevent the collision.

A motion for a compulsory nonsuit was refused, as were binding instructions requested by defendant. The jury was permitted to find that the Cincinnati Express had negligently passed a caution signal without reducing speed, and the attempt to bring it to a stop was at a point too close to the forward train to permit this to be successfully done, thus indicating wanton, wilful or gross negligence on the part of the employees, for which defendant was liable, notwithstanding the release from responsibility for damages appearing on the pass which entitled him to free transportation. A verdict for plaintiff was rendered, and judgment n. o. v. for defendant refused; hence this appeal.

It is not questioned that an attempted release from liability for negligence is ineffective in Pennsylvania where lack of care is shown to exist, and when the law of this State applies. The lower court, in its carefully considered opinion, held Bowman was proceeding on an interstate journey, and properly recognized that the federal rule, as to liability in cases where the holder of a pass has released from possible injury, must control the decision. The authorities so holding have been collected in the notes found in 49 United States Code Anno., page 86, to which reference is made. What was said, in part, in one of the latest United States Supreme Court decisions on this subject (Kansas City Southern Ry. v. Van Zant, 260 U. S. 458), in which the earlier authorities are referred to, may be appropriately repeated here: "The case presents the effect of a condition in a free pass

issued by petitioner to respondent, and used by her in transportation in interstate commerce,—whether determined by the provisions of paragraph 1 of the Hepburn Act (June 29, 1906, 34 Stat. at L. 584, chapter 3591, Comp. Stat. paragraph 8563, 4 Fed. Stat. Anno. 2d ed., page 337), or by the laws of [the state where the accident occurred]...... The provision for passes, with its sanction in penalties, is a regulation of interstate commerce to the completion of which the determination of the effect of the passes is necessary. We think, therefore, free passes in their entirety are taken charge of,—not only their permission and use, but the limitations and conditions upon their use. Or, to put it another way, and to specialize, the relation of their users to the railroad which issued them, the fact and measure of responsibility the railroad incurs by their issue, and the extent of the right the person to whom issued acquires, are taken charge of. And that responsibility and those rights, this court has decided, the railroad company can control by conditions in the passes. Antecedently to the passage of the Hepburn Act, we decided that a passenger who accepts a free pass may exempt a carrier from responsibility for negligence, and no public policy is violated thereby: Northern P. R. Co. v. Adams, 192 U. S. 440, 48 L. ed. 513; Boering v. Chesapeake Beach R. Co., 193 U. S. 442, 48 L. ed. 742...... The pass proceeded from the federal act; it is controlled necessarily in its incidents and consequences by the federal act, to the exclusion of state laws and state policies, and such is the effect of the cited cases."

Neither of the parties to the present suit disputes the correctness of the general proposition as above stated, but the extent of the release from responsibility, where the injured holder of the pass, or another on his behalf, brings suit, is a matter of controversy. The defendant insists that such a contract makes impossible recovery under any circumstances where loss occurs, while plaintiff urges, and this was the view taken by the trial judge,

that it is responsible where "wanton, wilful or gross negligence" is established, as suggested in some of the federal decisions cited in Kansas City Southern Ry. v. Van Zant, supra. In our view of the present case, a discussion of the merits of these respective contentions is unnecessary. The burden of proof was here on the plaintiff to show at least that the employees of defendant were guilty of wilful, wanton or gross negligence, and in this she failed. The court should therefore have so declared as a matter of law.

Had the claimant proved the engineer of the Cincinnati Express recklessly passed caution signals, and failed to reduce his speed, so that his train could be stopped within a reasonable distance when a red light became visible, a situation would have appeared as found in New York Cent. R. R. Co. v. Mohney, 252 U. S. 152, relied on below. In that case it was shown two block signals, indicating danger ahead, had been recklessly disregarded without attempting to bring the train under any control, and a rear-end collision resulted. No such evidence is disclosed here. The only testimony in the case showed the light at Gray Station to be green. If we eliminate this statement, there is no evidence on the subject. When the brakeman's warning light came into view, and the red light at the entrance of the second block, the emergency brake was immediately applied, but too late to stop the heavy train. Plaintiff offered no testimony to prove contrary conditions, unless that of the expert signal engineer be considered as establishing the essential fact, when he said the system was so arranged that a red light appeared when a train was on a block,—none was seen by the employee of the first train when he went back to give warning,—and, in such case, a yellow or caution sign should appear at the one before. He was not on the ground, and did not say such showed at Gray Station on the night of the accident, nor was he aware of the sufficiency of the electric connections controlling the signals on the day in ques-

tion. It may be that a temporary defect in the appliance prevented its operation, and green appeared, as McConnell, the only one who made observations, testified. Whatever the true fact, plaintiff failed to meet the burden of proof and show that a caution sign was displayed when the Cincinnati Express passed. The occurrence of the accident was not sufficient in itself to show it to be the result of lack of care of the degree necessary to be established before a recovery could be had: Pinnell v. St. L.-San F. Ry. Co. (Mo.), 263 S. W. 182, certiorari denied 266 U. S. 623; C., R. I. & P. Ry. Co. v. Maucher, 248 U. S. 359; Smith v. A., T. & S. F. R. R. (CC. A.), 194 Fed. 79.

To constitute wilful, wanton or gross negligence, there must be a realization, by the one guilty, of the possibility of the injury flowing from his act: 45 C. J. 675. To be wilful the harm must have been intentionally inflicted, and to be wanton must have been committed with a reckless regard of the rights of others. In the instant case, to justify a verdict for plaintiff, evidence must have disclosed that the engineer knew of the peril, and nevertheless proceeded and inflicted the injury with the result which could have been foreseen (DiMeglio v. P. & R. R. R. Co., 249 Pa. 319), and could have been prevented after he first became aware of the threatened danger: Cover v. Hershey Transit Co., 290 Pa. 551. It could not be contended here that there was an intention to run down the train in front, which in all likelihood would cause the injury or death, as it did, of the employees of the second train, nor was there any reckless disregard of a duty to protect others shown, since the attempt was made to stop as soon as the brakeman's signals were observed, and the red signal light was seen by McConnell. No violation of any statute, or even any rule of the railroad appeared, unless there was an intentional passing of a caution signal at Gray Station, and a failure thereafter to slow the speed of the train. As we have seen, the plaintiff failed to meet the burden of

proving the latter fact. The testimony of the only eyewitness, though called by defendant, was to the effect that the signal indicated a clear track until within a few hundred feet of the entrance to the block on which the Washington train was stalled, and the brakeman of the latter, who had gone back to give warning, and a witness for plaintiff, did not observe the presence of a danger sign. The civil engineer said that, if red appeared at the second post, then the preceding light should, under normal circumstances, have been yellow, a cautionary warning, but he knew nothing of the actual conditions on the ground when the accident occurred. There was no affirmative evidence of wilful, wanton or gross negligence of the employees of defendant, and the jury should not have been permitted to guess that it did exist. Not having met the burden of proof required of plaintiff, a recovery could not be permitted against the railroad for the death of Bowman, who, at the time, was making an interstate journey on a pass which exempted from liability.

The judgment is reversed and here entered for defendant.