## Louisville & N. R. Co. v. George.
June 6, 1939.

Eugene Hubbard, Judge.

Trabue, Doolan, Helm & Helm, H. T. Lively and J. P. Hamilton for appellant.

William S. Heidenberg and Richard Priest Dietzman for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The case presents the questions of the validity or extent of validity and application to the facts of conditions in an interstate railroad pass by which the user agreed to assume risks of accident. The appeal is from a judgment in favor of the appellee, Mrs. Lydia George, for $5,698.35 for personal injuries sustained July 6, 1936, at the Union Station in Louisville.

The plaintiff was 76 years old at the time but vigorous and active. She traveled alone most of the time, and testified that she never needed any assistance. There is no evidence tending to show that she needed the special attention or assistance required to be given infirm passengers by a carrier's employees. Mrs. George was returning to her home in Freeport, Texas. She was accompanied to the train by the husband of her granddaughter, Gordon Thurston, who carried her baggage. Several passengers had boarded the train when Mrs. George got on. She and Thurston testified that the train porter barred him from following or going with her up the car steps. When she got to the platform, according to Thurston:

"She stood up on the platform several seconds, and she turned and looked south to see if there was an

empty seat in the coach ahead, and immediately there was that sudden—very sudden, sharp jar, that knocked her off her feet, and she fell there in the vestibule of the train."

The witness stated that when Mrs. George fell her feet were out the car door in the vestibule. This would, of course, indicate that she was at the threshold when she was thrown to the floor or lost her balance. She suffered a fracture of her hip, and there is no claim that she was not seriously hurt. The moving and stopping of the train was under the following circumstances: It had come from Cincinnati and had been stopped a few feet from two pullman cars which were to be coupled on. When Mrs. George was in the position above described, the train was backed very slowly, about eight feet, according to Thurston, and four or five feet, according to the railroad employees. The brakes were set on the pullmans and they were practically immovable. The plaintiff testified that there was a "terrific crash" and Thurston that there was "a very sharp and sudden" and violent jerk or stopping caused by the train striking the pullmans or the putting on of the brakes of the moving train.

It is enough to say the trainmen related that there was a "good coupling" made by an experienced crew, in the usual and customary manner; that the train moved very slowly and there was little or no jar. In short, they proved that the jerk or stoppage could not in any sense be called unusual or unnecessary. The porter testified that Thurston had gone up the car steps and assisted Mrs. George inside the coach where she had fallen. He had called to her as she went in the door to watch her step as they were going to make a coupling.

The appellee was traveling on a gratuitous pass between Louisville and New Orleans, issued to her by reason of being the mother of a conductor employed by the Missouri-Pacific lines. The pass contained this condition: "The person accepting and using it thereby assumes all risk of accident to person or property." Mrs. George had signed: "I accept the above conditions."

Section 196 of the Constitution of Kentucky declares: "No common carrier shall be permitted to contract for relief from its common law liability." Under this we have held a carrier may not by a stipulation in an intrastate pass relieve itself of liability for injuries

sustained on account of its gross negligence—the question of ordinary negligence not being involved. Louisville & Nashville Railroad Company v. Brown, 186 Ky. 435, 217 S. W. 686.

But the Supreme Court, in Kansas City Southern Railroad Company v. Van Zant, 260 N. S. 459, 43 S. Ct. 176, 177, 67 L. Ed. 348, has construed Section 1, Paragraph (7) of Title 49, U. S. Code, 49 U. S. C. A., Section 1 (7), prohibiting a common carrier subject to the provisions of the Interstate Commerce Act from issuing free transportation for passengers except to specified classes of persons, as the assumption by Congress of its powers to regulate the subject to the exclusion of State laws and policies. Said the court:

> "We think, therefore, free passes in their entirety are taken charge of, not only their permission and use, but the limitations and conditions upon their use; or to put it another way, and to specialize, the relation of their users to the railroad which issued them, the fact and measure of responsibility the railroad incurs by their issue, and the extent of the right the person to whom issued acquires, are taken charge of."

We, therefore, look to the decisions of the Supreme Court of the United States to determine the validity of the contract of exemption from liability of the appellant for the accident sustained by the appellee.

We are not certain, under the present status of that court's opinions, whether such contractual release from liability to an interstate passenger is to be deemed valid under every condition or only where there was no wilful or wanton negligence. The court has held that a passenger who accepts a free pass may exempt the carrier from responsibility for negligence, and no public policy is violated thereby, in Northern Pacific Railway Company v. Adams, 192 U. S. 440, 24 S. Ct. 408, 48 L. Ed. 513; Boering v. Chesapeake Beach Railway Company, 193 U. S. 442, 24 S. Ct. 515, 48 L. Ed. 742; Charleston & Western Carolina Railway Company v. Thompson, 234 U. S. 576, 34 S. Ct. 964, 58 L. Ed. 1476. However, in Missouri, K. & T. Railway Company v. Zuber, 76 Okl. 146, 184 P. 452, 7 A. L. R. 840, it is pointed out that the question of gross negligence was not considered in those cases. All courts hold where there was some compensation or consideration for the

issuance of the pass, such a contract as to any degree of negligence is void. New York Central Railroad Company v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; 5 R. C. L. 8.

The most recent case to which our attention has been called is New York Central Railroad Company v. Mohney, 252 U. S. 152, 40 S. Ct. 287, 64 L. Ed. 502, 9 A. L. R. 496. The case was considered on a writ of certiorari to a court of appeals of Ohio and involved a sharp question of whether the passenger at the time was using a pass for interstate or intrastate transportation. The Ohio Court had concluded Mohney was an interstate passenger when injured and that the release on the pass was valid under the rulings of the Supreme Court of the United States, but went further and held that the negligence which had caused his injury was wilful and wanton and for those reasons the release did not constitute a defense to the action. The Supreme Court regarded the passenger as traveling intrastate and that the Ohio law was applicable, and under that law—the evidence showing wilful and wanton negligence—the exempting condition of the pass was not valid or binding. Nevertheless, the court proceeded to consider the subject briefly and generally and indicated that were the federal law to be applied it would reach the same conclusion. Two of the justices concurred in the result, being of opinion that Mohney was using the pass on an interstate journey and that "the release clause on the pass did not cover or embrace his injury because the latter resulted from wilful or wanton negligence, as to which such a clause is of no force or effect." The Circuit Court of Appeals for the Eighth Circuit Court, in Bush v. Brenner, 36 F. (2d) 189, distinguished the case from the one before it as having involved an Ohio statute declaring such exemptions invalid, but held that the provision in the pass absolving the carrier from liability for injury to a free interstate passenger valid under federal law. It seems unnecessary to attempt to harmonize these cases with earlier ones. The more favorable concession to the appellee does not help her, for unless it can be said that the negligence shown by the evidence introduced in her behalf as causing her injury was wilful or wanton, the provision in the pass by which she agreed to assume the risk of accident bound her and afforded the appellant a complete defense under the federal law. "Willful or wanton negligence" is quite

foreign to our terminology in considering civil wrongs. For many years negligence has been defined in this jurisdiction as being either gross or ordinary, the conventional abstract definition of the one being that it is the absence of slight care and the other of ordinary care. Louisville & Nashville Railroad Company v. Brown, supra. And yet, in the matter of permitting recovery of punitive damages, gross negligence has been subdivided and regarded as embracing two degrees, for it has been often written that not every case of gross negligence authorizes the assessment of punitive damages. To warrant an instruction allowing exemplary damages there must have been evidence of malice or willfulness or such conduct as evinced a recklessness or wanton disregard of the rights or safety of others. Chesapeake & Ohio Railway Company v. John's Adm'x, 155 Ky. 264, 159 S. W. 822, 50 L. R. A., N. S., 853; Cadle v. McHargue, 249 Ky. 385, 60 S. W. (2d) 973. There are many definitions of "wilful or wanton negligence." We may accept as sufficient this statement in Higbee Company v. Jackson, 101 Ohio St. 75, 128 N. E. 61, 64, 14 A. L. R. 131, op. cit. 137, viz.:

> "The authorities are uniform in holding that to constitute willful or wanton negligence it is not necessary to show ill will toward the person injured, but an entire absence of care for the life, person, or property of others which exhibits indifference to consequences makes a case of constructive or legal willfulness. A complete indifference to consequences distinguishes wrongs caused by wantonness and recklessness from torts arising from negligence."

The term "wilful or wanton negligence" in cases of this character is substantially the equivalent of "gross negligence" of the character and degree which under our practice authorizes a punitive damage instruction. As stated in 10 Am. Jur., Carriers, Section 1147:

> "There is no fixed pattern of liability in this connection. No adequate definition has yet been formulated by the courts of the term 'gross negligence,' beyond such broad generalities as that 'gross negligence is the want of slight diligence,' and similar unworkable rules. Indeed, the Supreme Court of the United States has reaffirmed the lack of a guide by which to judge the factum of gross negligence in a particular situation, and has relegated this task to the jury."

The annotation in 7 A. L. R. 852, presents the decisions up to its date of preparation, holding what was or was not gross negligence in cases involving the liability of carriers for injury to free passengers. Subsequent cases are Lanier v. Bugg, 32 Ga. App. 294, 123 S. E. 145; Forster v. Southern Railway Company, 39 Ga. App. 216, 146 S. E. 516; Bowman v. Pennsylvania Railroad, 299 Pa. 558, 149 A. 877. In none of them—those holding there had been gross negligence as well as those holding the omission did not amount to gross negligence—were the facts as indicative of only ordinary negligence as in the case at bar. Our attention has not been called to any decision in which the facts are analogous to those here presented holding the conduct of the carrier—giving to it the view most favorable to the plaintiff—to be gross negligence. Though the instructions given in the case confined plaintiff's right of recovery to a belief by the jury that the defendant was guilty of "wanton and wilful" negligence, since she established only ordinary negligence as having caused her injury, the trial court should have directed a verdict for the defendant.

Judgment reversed.

Whole Court sitting.