## Lowe v. Commonwealth.

June 23, 1944.

L. B. Weir and Fox & Gordon for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

In May, 1943, the grand jury of Hopkins county, Kentucky, returned an indictment against appellant, charging him with voluntary manslaughter. The indictment charged, in substance, that the appellant did unlawfully, wilfully, feloniously, and in a negligent, reckless, careless and wanton manner, while driving an automobile on the public highway about two miles from Madisonville, Kentucky, kill Virgil Welborn by driving the automobile in which he and Welborn were riding in such a careless, negligent, reckless and wanton manner, and at a high rate of speed, that he caused same to wreck, thereby inflicting wounds upon Welborn from which he then and there died. A trial was had in May, 1943, resulting in a jury verdict of guilty of voluntary manslaughter and fixing his penalty at two years in the penitentiary, and from a judgment entered upon that verdict appellant has prosecuted this appeal.

Various alleged errors and grounds for reversal are set out in the motion and grounds for a new trial and also insisted on in brief of appellant, the first of which is that the evidence is insufficient to show negligence of any character and the court erred in refusing to peremptorily instruct the jury to find a verdict for appellant. We will first consider the evidence.

Craig Riddle, introduced by the Commonwealth, testified that on the afternoon of the accident he and his wife were horseback riding on the Laffoon Trail, a black top highway; that they were traveling east, single file, with his wife following behind him; that he heard a car approaching on the same road, traveling west or in the opposite direction, and that a hill obscured his view of the car when he first heard it and that the car was making a great, roaring sound, such that attracted his attention; that as the car came over the hill near him it swayed over to the driver's right side of the road and ran two wheels off the black top onto the soft shoulder and it came back on the road and apparently the driver lost control of it and it went across the road and ran off the black top on the driver's left side and landed in a wheat field several feet from the highway;

that he and two boys who were riding bicycles along the road in the same direction Riddle was traveling, went to the car and helped the appellant out of the car; that he had a large knot on his forehead and was in a dazed semi-conscious condition. He was asked if he smelled liquor and he said he did. He further said that the shoulders of the road had recently been graded and were very wet and soft and that the highway was slick from rain that had fallen the night before and there were puddles of water still standing on the road. He was asked how fast in his opinion the car was traveling and he answered "pretty fast" and said that in his judgment it was running about sixty miles per hour. G. W. Siria and Glenn Siria, who were riding the bicycles, testified that they heard the automobile making a loud, roaring noise. G. W. Siria testified that he did not see the automobile as it went into the field and did not state how fast it was running, but Glenn Siria testified that the automobile was traveling about sixty miles per hour; that the automobile went off the highway on to the soft shoulder on the driver's right side of the road, resulting in the wreck as described by other witnesses. Another witness testified that the car was traveling around seventy or eighty miles per hour. Without giving a further detailed resume of the evidence, it is sufficient to say that the evidence for the Commonwealth is sufficient to support a finding of the jury that appellant was driving the automobile at a high rate of speed, approximately sixty miles per hour.

According to the evidence of appellant, on Saturday afternoon of the day the accident occurred he met the deceased, Welborn, in Madisonville and Welborn wanted him, appellant, to take him to Earlington to see about getting a job. They went to Earlington but Welborn did not get a job there and they then returned to Madisonville and went to a restaurant and both he and Welborn ate two hot dogs each and each drank a bottle of near beer; that after they left the restaurant they got in the automobile and started out the Laffoon Trail going to the Sentry Mines to see about getting a job for Welborn at the mines and the wreck occurred when they were about three miles from Madisonville. He said he saw approaching him from the opposite direction two people riding horseback, single file, and two boys on bicycles riding abreast, and that they were all on their right side of the road; that the boy near the center of the

road was "wobbling" his bicycle and it looked to him like he was about to lose control of it or fall, and in order to give the horseback and bicycle riders as much room as possible he pulled his automobile off the pavement on to the shoulder of the road, which looked smooth and was almost level with the pavement but was about six inches deep in mud. He then described how he struggled to get his automobile back on the pavement and that the right front tire blew out and he lost control of it and it went off the highway, resulting in the wreck. He said he was being urged by Welborn to drive faster in order to get to the mines before the office closed but that he was only driving about forty or forty-five miles per hour. He said that he was not drunk and was not drinking, and had drunk nothing but the one glass of near beer before he left Madisonville. Other witnesses who helped to rescue appellant from the wrecked automobile testified that they smelled no liquor on appellant or about the car. Appellant and other witnesses who testified for him attempted to account for the unusually loud roar or noise of the car because it had no muffler, and claimed that an automobile without a muffler would make more noise than one with a muffler. That may be true, but three or four witnesses for the Commonwealth who testified to the speed of the automobile saw it and were not relying solely upon the noise it made. He said that he had been driving automobiles for more than ten years.

Appellant does not claim that he was confronted with an emergency in that it was necessary for him to drive his automobile off the pavement on to the shoulder of the road in order to avoid striking or colliding with the people on horseback or on the bicycles. He admits that all these people were on their right side of the road, which was not appellant's side, since they were traveling in the opposite direction, and that one boy on a bicycle was near the center of the road, which left appellant one-half of the road, which he says was eighteen feet wide, or nine feet hard surface on which to operate his automobile. We think that the speed at which appellant was running his automobile, according to the witnesses for the Commonwealth, together with the fact that he left the hard surface and went on the dirt shoulder of the road, was sufficient to support a jury finding that he was negligent in the operation of his automobile.

The case must be determined, however, upon the degree of negligence shown by the evidence; that is, whether the defendant's negligence was gross, wanton, and showed a lack of slight care for the protection of the deceased Welborn, or whether he was guilty only of ordinary negligence. The court instructed the jury on both voluntary and involuntary manslaughter. Instruction No. 1 told the jury, in substance, that if the defendant did unlawfully, wilfully, feloniously, and in a reckless, careless and wanton manner drive his automobile on the highway at such high rate of speed that caused the same to wreck, thereby resulting in the death of Welborn, they would find him guilty of voluntary manslaughter and fix his punishment at confinement in the state penitentiary for not less than two years nor more than twenty-one years, in their reasonable discretion. Instruction No. 2 dealt with involuntary manslaughter and submitted to the jury the misdemeanor phase of the case. This instruction told the jury, in substance, that if they believed that the defendant did unlawfully, negligently and carelessly, but not in a wanton manner, drive his automobile at a high rate of speed, and when he did not believe and have reasonable grounds to believe that it was dangerous to the life of Welborn to so drive the said automobile at the time and place, in that event they would find him guilty of involuntary manslaughter and fix his punishment at a fine in any sum, or by confinement in the county jail for any length of time, or both by such fine and imprisonment, in their reasonable discretion. Instruction No. 3 was the usual reasonable doubt instruction as to the degree of the offense; that is, whether appellant was guilty of voluntary or involuntary manslaughter. Instruction No. 4 told the jury that if they entertained a reasonable doubt of the defendant having been proven guilty they would find him not guilty.

Although the evidence is sufficient to take the case to the jury on the issue of ordinary negligence, yet we do not think that the evidence was sufficient to warrant a submission of the case to the jury on the question of voluntary manslaughter, authorizing the jury to find defendant guilty of a felony. Two degrees of negligence are recognized in Kentucky: "Ordinary negligence," or the failure to exercise that care which ordinarily prudent persons would exercise in like or similar circumstances; and "gross negligence," which is the absence of slight

care. Louisville & N. R. Co. v. George, 279 Ky. 24, 129 S. W. 2d 986; Louisville & N. R. Co. v. Brown, 186 Ky. 435, 217 S. W. 686.

In Commonwealth v. Mullins, 296 Ky. 190, 176 S. W. 2d 403, 404, Mullins was indicted for voluntary manslaughter and the trial resulted in a hung jury and the Commonwealth appealed for a certification of the law. A school bus had stopped on the highway for the purpose of discharging passengers and Mullins, who was driving an automobile on the highway, passed the school bus while it was standing instead of coming to a complete stop as required by KRS 189.370. In passing the bus he struck and killed a seven year old boy. The court instructed the jury on both voluntary and involuntary manslaughter and this court held, in substance, that while it was negligent of Mullins to attempt to pass the school bus while it was standing, yet such act of negligence was only ordinary negligence rather than wanton and reckless such as to indicate a disregard for human life, such as to amount to a felony. The court said:

"Involuntary manslaughter is the killing of another in doing some unlawful act not amounting to a felony and not likely to endanger human life and without intention to kill, or the killing of another while doing a lawful act in an unlawful or negligent manner where the negligence is not such as to indicate a disregard for human life. Hunt v. Commonwealth, 289 Ky. 527, 159 S. W. 2d 23. 'One who drives an automobile on the highway in such a manner as to violate the law of the road, or negligently and carelessly drives same so as to endanger the life or limbs or property of another on the highway, and in so doing strikes and kills another, is guilty of involuntary manslaughter.' "

The case was reversed and remanded with directions that if the evidence was substantially the same on another trial, the instruction on voluntary manslaughter should be omitted. Also, in Cornett v. Commonwealth, 282 Ky. 322, 138 S. W. 2d 492, it was held that one who drives an automobile upon the highway recklessly, with gross carelessness or in a wanton manner that he knows, or has reasonable ground to believe, is reasonably calculated to injure another using the highway, and in so doing strikes and kills another, is guilty of voluntary manslaughter, while one who drives an automobile on

the highway in such a manner as to violate the law of the road, or negligently and carelessly drives automobile so as to endanger the life or limbs or property of another on the highway, but not with gross carelessness or in a wanton manner, and in so doing strikes and kills another, is guilty of involuntary manslaughter. We conclude, therefore, that if appellant was guilty of any negligence it was only ordinary negligence such as to bring the case within the scope of involuntary manslaughter rather than voluntary manslaughter. Upon another trial of the case, if the evidence is substantially the same the court will omit the voluntary manslaughter instruction.

It is next insisted that the court erred in refusing to give an instruction on accidental death. In Tucker v. Commonwealth, 145 Ky. 84, 140 S. W. 73, it was held that it is the rule that instructions applicable to every state of case deducible from the testimony, or supported by it to any extent, should be given. See also, Peay v. Commonwealth, 181 Ky. 396, 205 S. W. 404. While the evidence in the present case is not strong with respect to appellant's right to an instruction on accidental killing, yet in view of his testimony and the attendant circumstances, and the fact that defendant is entitled to the benefit of all reasonable doubt, we think that upon another trial of the case, if the evidence is substantially the same, the court should instruct the jury on accidental killing.

Lastly, it is insisted that the court erred in refusing to instruct the jury on contributory negligence of the deceased, citing in support thereof a number of cases, all of which are civil actions for damage. We know of no authority or rule of law authorizing an instruction on contributory negligence as against the Commonwealth in criminal prosecutions like and similar to the one here involved.

For reasons indicated, the judgment is reversed and remanded for proceedings consistent with this opinion.