## Cincinnati, N. O. & T. P. Ry. Co. v. Hansford.

June 3, 1947.

Rehearing denied November 21, 1947.

J. B. Johnson, Judge.

Tye & Siler for appellant.

Leonard S. Stephens for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES— Reversing.

J. H. Hansford instituted this action to recover damages from the Cincinnati, New Orleans & Texas Pacific Railway Company for alleged negligent injury to his hand. The case was submitted to a jury, and a verdict for $700 in favor of the plaintiff was returned.

At the time of the accident the plaintiff was riding on a pass issued to him and six other employees of the defendant for a round trip from Mt. Carmel, Illinois, to Stearns, Kentucky. The pass contained the following condition:

"In consideration of the issuance of this free pass, I hereby assume all risk of personal injury and of loss of or damage to property from whatever causes arising, and release the carrier from liability therefor; and I hereby declare that I am not prohibited by law from receiving free transportation and that this pass will be lawfully used."

The plaintiff's name appeared on the pass immediately under the foregoing condition, but he denied signing it and said that it was signed by some foreman or other employee at Mt. Carmel. Be that as it may, he accepted it and used it.

Reversal of the judgment is sought on three grounds: (1) The trial court erred in overruling appellant's motion for a directed verdict in its favor; (2) the instructions are erroneous; and (3) the damages are excessive.

The accident in which appellee received his injury occurred when the train stopped at Stearns, Kentucky. Appellee claimed that the train stopped with a sudden jerk, throwing him against the door, and that the door closed on his hand. The fifth or little finger on his right hand was caught and injured. He lost the nail, but an X-Ray disclosed no injury to the hand or fingers except evidence of a fracture at the tip of the distal phalanx. His medical expense amounted to one dollar. The damages are grossly excessive, but it is not necessary to discuss this ground for reversal or ground (2), since we have concluded that the trial court should have peremptorily instructed the jury to find for the defendant.

The appellant's principal contention on this appeal is that since any negligence shown amounted to no more

than ordinary negligence, it should have had a directed verdict, and that the court erred in submitting the case to the jury on the basis of the care owed to a passenger for hire or at all. The case involves a consideration of the Hepburn Act, 49 U. S. C. A. sec. 1(7), which controls the issuance of interstate passes and the liability of the railroad issuing same. In so far as interstate travel is concerned, the Congress has taken over the entire field of free passes, and a railroad company can make a valid contract with a person traveling on a free pass exempting it from liability for ordinary negligence. Kansas City Southern Railroad Company v. VanZant, 260 U. S. 459, 43 S. Ct. 176, 67 L. Ed. 348; Louisville & Nashville Railroad Company v. George, 279 Ky. 24, 129 S. W. 2d 986. Appellant cites a number of cases in support of its position, and appellee says that these cases can be distinguished because they involve members of the employee's family and not the employee himself. Appellee relies upon Sassaman v. Pennsylvania Railroad Company, 144 F. 2d 950, decided by the Circuit Court of Appeals for the Third Circuit. In the Sassaman case an employee of the company was riding on a pass issued to him to travel to and from his work. The pass contained a release of any liability on the part of the company. The court there distinguished a case of that nature from a case where the employee is traveling for his own personal pleasure or other personal reasons. The decision is based on the idea that the pass issued to the employee was part of the consideration for the services he rendered to the company. The employee was required to travel by some means between his home and his work each day, and for this reason the court said that the pass was part of his compensation and that he could be treated as a fare paying passenger. Thus the railroad company owed him the highest degree of care, and it was not necessary for him to prove gross or wanton negligence in order to sustain his action. The Sassaman case is distinguishable from the present case. There the transportation was furnished by the employer as an incident to the employment. It does not follow because the appellee was traveling to his home that he was not taking the trip for his own personal pleasure or other personal reasons. He was certainly not commuting from Stearns to Mt.

Carmel to perform his work each day. The appellee attempted to show that the appellant received some compensation for his use of the pass. He testified that he rode on the pass from Mt. Carmel to Stearns, and then was supposed to deliver it to another party in or near Stearns. He drove to this party's home in a taxicab and paid a taxi fee of one dollar. He says that this act on his part furnished compensation to appellant, and put him in the position of a fare paying passenger. Appellee left Mt. Carmel, Illinois, on November 24, 1945, and arrived at Stearns, Kentucky, on November 25. He had been working for the railroad company at Mt. Carmel, Illinois, since some time in August, 1945, and had made three or four trips to his home at Stearns, Kentucky. On each occasion he had made the round trip on a pass issued by his employer. He testified that prior to November 24 he notified his foreman that he intended to quit work, and asked for a pass to his home. The foreman testified that appellee said he was about to sell some property at his home in Stearns, Kentucky, and wished to go to Stearns to close the transaction. In either event the pass was a mere gratuity. There is nothing to show that the railroad company was obligated to furnish free transportation to appellee or that the pass was issued under an agreement or understanding that appellee should receive it in consideration of services rendered by him. In Charleston & Western C. Railway Company v. Thompson, 234 U. S. 576, 34 S. Ct. 964, 965, 58 L. Ed. 1476, the Supreme Court, speaking through Mr. Justice Holmes, said:

"The main question is whether, when the statute permits the issue of a 'free pass' to its employees and their families, it means what it says. The railroad was under no obligation to issue the pass. It may be doubted whether it could have entered into one, for then the services would be the consideration for the duty and the pass, and by sec. 2 it was forbidden to charge 'a greater or less or different compensation' for transportation of passengers from that in its published rates. The antithesis in the statute is between the reasonable charges to be shown in its schedules and the free passes which it may issue only to those specified in the act. To most of those enumerated the free pass obviously would

be gratuitous in the strictest sense, and when all that may receive them are grouped in a single exception, we think it plain that the statute contemplates the pass as gratuitous in the same sense to all. It follows, or rather is saying the same thing in other words, that even on the improbable speculation that the possibility of getting an occasional free pass entered into the motives of the employee in working for the road, the law did not contemplate his work as a conventional inducement for the pass, but, on the contrary, contemplated the pass as being what it called itself, free.''

We think that in any view of the case the transportation was furnished to appellee as an independent act of courtesy and not as an incident of the employment. From what has been said, it follows that the court erred in overruling appellant's motion for a directed verdict in its favor.

Judgment is reversed for proceedings consistent herewith.